CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. CLEMENTS & CARROLL.

Decided January 6, 1909.

**1.—Jurisdiction—Damages to Interstate Shipment—Federal Act Construed.**

In a suit against the carrier for injuries to cattle shipped from one State to another caused by unreasonable delay, rough handling and improper bedding of cars, the cause of action was based on a breach of the carrier's common law liability or contractual duty, which, though pertaining to interstate commerce, is not regulated or in any way affected by the Act of Congress as amended by the Act of June 29, 1906, known as the Hepburn Amendment, and the State court at point of destination had jurisdiction.

**2.—Continuance—Amendment of Pleadings.**

In an action to recover from the carrier for damages for injuries to a shipment of live stock wherein the plaintiff in the original petition alleged the measure of damages was the difference between the market value of the animals in the condition they should have arrived at destination but for the negligence of the carrier, and the condition they were in when they did arrive, a trial amendment alleging the intrinsic value and praying in the alternative the difference between the market value in the condition they should have arrived and their intrinsic value at destination in their damaged condition, did not entitle the defendant to a continuance, in the absence of any evidence in support of the issue presented by the trial amendment.

**3.—Evidence—Declaration of Agent.**

In an action against a connecting carrier for injuries to a shipment, the admission of the declaration of a party that he was the defendant's yardmaster, could not prejudicially affect the defendant in the absence of any showing in the bill of exception as to what was said in the conversation in which the declaration was made.

**4.—Same—Agency.**

In a suit against a carrier for injuries to a shipment, the admission of the declaration of a party that he was the carrier's yardmaster at a certain place could not injure the defendant, even if not admissible as *res gestae*, when it was in proof that the declarant was engaged at such place in directing the management and movements of the defendant's trains, that his directions to such ends were obeyed by the servants operating the trains, and that the authority he thus exercised was such as is usually given a yardmaster.

**5.—Exceptions to Pleadings—Assignments of Error.**

An assignment of error complaining of the overruling of special excep-

tions to pleadings will not be considered when it does not appear from the record that the exceptions were called to the attention of the court and ruled upon.

**6.—Evidence—Negligence—Carriers.**

Where, in a suit against the carrier for injuries to a shipment of horses and mules, it was alleged that the animals were negligently loaded in cars which were not bedded, and the evidence showed that the cars used were not bedded, evidence that it was usual and customary for railroads to bed cars in which cattle were shipped was admissible as tending to prove the negligence alleged. The same reasons for bedding cars for the transportation of cattle obtains when they are used for carrying horses and mules.

Appeal from the District Court of El Paso County. Tried below before Hon. J. M. Goggin.

*W. R. Clements* and *L. V. Carroll,* for appellants.—These defendants assign as fundamental error the refusal of the trial court to grant the motion of these defendants contained in their motion for new trial, to dismiss this case and decline to take further jurisdiction of the same, which motion was, in effect, that this court had no jurisdiction to try or determine the issues raised in this cause, the jurisdiction to try and determine the same being vested exclusively in the Interstate Commerce Commission or the United States Circuit and District Courts, or one or all of them, under the Constitution and laws of the United States, and defendants invoke the said Constitution and law in opposition to the jurisdiction of this court, said cause of action, if any, arising exclusively under, and the rights of the parties hereto being determined by, the provisions of that certain Act of Congress entitled, "An Act to Regulate Commerce," approved June 29, 1906, which Act gives exclusive jurisdiction to try and determine this action in the Interstate Commerce Commission and the United States Circuit and District Courts. Gulf, C. & S. F. Ry. Co. v. Moore, 98 Texas, 302; Texas & P. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426; Claflin v. Houseman, 93 U. S., 135; Swift v. Philadelphia R. R., 58 Fed., 858; Sunderland Bros. v. Chicago, R. I. & P. Ry. Co., 158 Fed., 877; Sheldon v. Wabash Ry., 105 Fed. 785; Van Patten v. Railway Co., 74 Fed., 981; Interstate Commerce Act, secs. 9, 20, 22.

*W. M. Peticolas,* for appellee.

NEILL, Associate Justice.—We adopt the statement made by the trial court in its charge of the nature of this suit, which is as follows: "This is a suit by plaintiffs, W. R. Clements and L. V. Carroll, composing the firm of W. R. Clements & Company, against the Chicago, Rock Island & Pacific Railway Company, the Chicago, Rock Island & Gulf Railway Company, the Chicago, Rock Island & El Paso Railway Company, the El Paso & Rock Island Railway Company, the El Paso & Northeastern Railway Company, and the El Paso & Northeastern Railroad Company, for damages alleged to have been sustained to a certain shipment of stock from Kansas City, Missouri, to El Paso, Texas, over said defendant lines.

"Plaintiffs allege that on or about the 2d day of November, 1907,

they tendered to the Chicago, Rock Island & Pacific Railway Company twenty-one head of stock, consisting of sixteen horses and five mules, for shipment over the above-named lines to El Paso, Texas; that said shipment was accepted by the defendants and each of them, but was not transported over the said lines, or any of them, with reasonable despatch, but was unreasonably and negligently delayed *en route,* not reaching El Paso until about eleven o'clock a. m. on November 9th; that the defendants failed to bed properly the car in which said animals were transported, and said shipment on each and all of said roads was greatly jarred and jerked and very roughly handled; that the failure properly to bed said cars and said delay in transportation, as well as said rough handling, was negligence on the part of each and all of said defendants, and resulted in serious injury to said shipment, greatly reducing the value of the same at point of destination; and plaintiffs pray that they recover the difference between the market value of said animals in the condition they should have arrived in but for such alleged negligence on the part of the defendant companies and the condition they did arrive in, and if they are not entitled to recover the difference in market value, that then they recover the difference between the market value in the condition they should have arrived in and the intrinsic value of said animals in the condition they were in upon arrival.

"The defendants answer by a general denial, and specially deny any negligence on the part of said roads, or either of them, and say that said shipment, as a matter of fact, was transported with reasonable despatch, without any rough handling, and without any failure on their part to bed said cars, alleging that they were not required to bed same; and defendants say that the Chicago, Rock Island & Pacific Railway Company owned and owns and operated and operates said line of railroad extending from Kansas City, Missouri, to Texhoma, on the Texas line; that the Chicago, Rock Island & Gulf Railway Company owns, and owned and operated, said line extending from Texhoma to a station called Bravo, on the New Mexico line; that the Chicago, Rock Island & El Paso Railway Company owned, and owns and operates, said line extending from Bravo to a place called Tucumcari, in the Territory of New Mexico; that the El Paso & Rock Island Railway Company operated and operates said line extending from Tucumcari to a place called Carrizozo; and that the El Paso & Northeastern Railway Company operated and operates said line extending from Carrizozo to the northern boundary line of the State of Texas and the Territory of New Mexico; and that the El Paso & Northeastern Railroad Company operates said line from the last-named point to the city of El Paso, and defendants deny that any partnership existed between any of said defendants at the time of said shipment, except between the El Paso & Rock Island Railway Company, the El Paso & Northeastern Railway Company, and the El Paso & Northeastern Railroad Company, extending from said town of Tucumcari to the city of El Paso."

The trial resulted in a judgment in favor of the plaintiffs for $1,500, which was apportioned amongst the different defendants according to the various sums the jury, in their verdict, found them severally liable. They have all appealed from the judgment.

*Conclusions of fact.*—The evidence is reasonably sufficient to show that each defendant was guilty of such acts of negligence as were alleged against it and submitted by the court in its charge to the jury, and that by reason of such negligence plaintiffs were damaged in the sum of $1,500, which damage was caused by the several defendants to the amount respectively assessed by the verdict against each of them.

*Conclusions of law.*—1. The contention of appellants, that the court below was without jurisdiction to try the case because exclusive jurisdiction thereof was, under the Act of Congress, entitled an Act to Regulate Commerce, as amended by the Act of June 29, 1906, known as the Hepburn Amendment, given the Interstate Commerce Commission and the Circuit and District Courts of the United States, can not be sustained either upon principle or authority. The cause of action alleged and proved did not arise from and is not based upon any infraction of the Act in question and its amendment, but from a breach of defendants' common-law or contractual duty, which, though pertaining to interstate commerce, is not regulated, trenched upon or in any way affected by the Act of Congress. Hence the cases of Gulf, C. & S. F. Ry. v. Moore, 98 Texas, 302; Texas & P. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S., 425, 51 L. ed., 553; Texas & P. Ry. Co. v. Cisco Oil Mill, 204 U. S., 449, 51 L. ed., 562; Texas & P. Ry. Co. v. Mugg, 202 U. S. 242, 50 L. ed., 1011; Claflin v. Houseman, 93 U. S., 130, 23 L. ed., 833; Swift v. Philadelphia R. R., 58 Fed. Rep., 858; Sunderland v. Chicago, R. I. & P. Ry. Co., 158 Fed. Rep., 877; Sheldon v. Wabash R. Co., 105 Fed. Rep., 785; Van Patten v. Chicago, M. & St. P. R. Co., 74 Fed. Rep., 981, relied upon by appellant, have no application to the question raised by the assignment, unless it be to show that the matters here involved are such as may be taken cognizance of by our State courts, as is especially illustrated by the Supreme Court's remanding the Moore case to be tried upon an issue not affected by the Interstate Commerce Act. See Galveston, H. & S. A. Ry. Co. v. Piper Company, decided by this court on December 9, 1908 (115 S. W., 107), for an opinion, in a case involving the same question, which upholds the jurisdiction of the State courts.

2. In plaintiffs' original petition the measure of damages alleged was the difference between the market value of the animals in the condition they should have arrived at El Paso, Texas, but for the negligence of defendants, and the condition they were in when they did arrive there. During the progress of the trial plaintiffs filed a trial amendment, alleging that if the animals had no market value at El Paso in their damaged condition, they had there an average intrinsic value of $150 each, and, in the alternative, asked judgment for the difference between their market value in the condition they should have arrived but for defendants' negligence, and their intrinsic value at that place in their damaged condition. Whereupon defendants moved the court to allow them to withdraw their announcement of ready for trial, and to continue the case upon the ground that they had made no preparation to meet the change in plaintiffs' pleadings made by such trial amendment; and could not, therefore, continue the trial of the cause. The court overruled the motion, and its action in doing so is assigned as error.

It does not appear from the statement in appellants' brief that any testimony was introduced by the plaintiffs in support of the issue presented by the trial amendment. If there was none (which we may assume from the absence of its statement in appellants' brief, without examining the statement of facts), defendants were not prejudiced by the ruling of the court. If, however, it should appear that testimony was introduced in support of such issue, we would not be prepared to say from the record, as presented to us, that the ruling complained of should cause a reversal of the judgment. While the term "market value" is not synonymous with "intrinsic value"—the one meaning the actual price in which the commodity is commonly sold, the other its true, inherent and essential value, independent of accident, place or person, but is the same everywhere and to everyone—yet the latter is so generally a factor which enters into the determination of the former that it may be said that a thing which has no intrinsic value is generally without market value. This, as to some commodities, is so frequently the case that at a given time and place its market and intrinsic value are the same, or so nearly that the one is scarcely distinguishable from the other. If, then, there was any difference in the intrinsic and the market value of the animals in their damaged condition when they reached El Paso, where the case was tried, it would seem that if the defendants were prepared to meet the issue as to their market value they would, if not from such preparation ready to meet the issue raised by the trial amendment, have been able to prepare their case on such issue in a short time without having to resort to a continuance for that purpose. Besides, if the plaintiffs introduced any evidence in support of their amendment of intrinsic value, the defendants should have, at least, shown in their motion for a new trial a probability of procuring testimony on another trial of the case which would in some way tend to rebut such evidence. Neither the motion for continuance nor for a new trial tends to show the existence of such rebutting testimony. Therefore, it not appearing from anything in the record that a reversal of the judgment and remanding the case for another trial would be of any avail to the defendants, the assignment of error should not, in our opinion, be sustained.

3. It does not appear from the statement under the sixth assignment of error in appellant's brief, nor from the bill of exceptions upon which the assignment is predicated, what was said in the conversation between the witness Carroll and the person at Tucumcari who stated to the witness that he was defendants' yardmaster. Unless something was said by that person which would, as coming from their agent, in some way prejudicially affect defendants or some of them, it can not be perceived how the mere statement by the person that he was the yardmaster of defendants could injure them. If, however, it was a matter of any moment to plaintiffs to prove that the person occupied the relation to defendants of yardmaster at that station, though such relation could not be shown by his bare statement, when it was proved that he was engaged at that place in directing the management and movement of defendants' trains, that his directions to such ends were obeyed by their servants who were employed in operating them, and that the authority he thus exercised was such as is usually given a yardmaster, we do not think

that his statement to the witness that he occupied such position could have in any way prejudiced the defendants, even if such statement, made while he was discharging the duties of such position and his orders being obeyed by the other servants of defendants, was not *res gestae*.

4. As it does not appear from the record that the special exceptions to plaintiffs' petition, which the ninth and tenth assignments complain of as being overruled, were called to the attention of and ruled upon by the court, such assignments will not be considered.

5. The same reason for bedding cars for the transportation of cattle obtains when they are used for carrying horses or mules. Therefore, it having been alleged by plaintiffs that the animals were negligently loaded in cars which were not bedded, and as the evidence showed that the cars in which they were loaded were not bedded between Kansas City and Dalhart, evidence that it was usual and customary for railroads to bed cars in which cattle are shipped was admissible as tending to prove the alleged negligence. As the contract under which the animals were shipped, if in writing, does not appear in the record, and as it does not otherwise appear that the contract provided that the plaintiffs should bed the cars, it can not be held, as is urged by appellants in their proposition under the eleventh assignment, that such testimony was immaterial and irrelevant.

6. Our conclusions of fact dispose of the twelfth assignment adversely to appellants. There is no error in the judgment, and it is affirmed.

*Affirmed.*

Writ of error refused.