## M–K–T RY. CO. v. JAFFEE COTTON PRODUCTS MFG. CO., Inc.

### No. 9542.

Court of Civil Appeals of Texas. Austin.

April 3, 1946.

Rehearing Denied April 24, 1946.

G. H. Penland, Touchstone, Wight, Gormley & Touchstone, and Geo. C. Cochran, all of Dallas, for appellant.

J. Manuel Hoppenstein, Carter & Gallagher, R. Guy Carter, and Ben T. Warder, Jr., all of Dallas, for appellee.

BAUGH, Justice.

Appellee, hereinafter referred to as Jaffee, sued appellant, hereinafter referred to as the railway company, for damages to two secondhand waste cotton picker machines shipped from Manchester, N. H., to Honey Springs, Dallas County, Texas, on July 31, 1942. They arrived in August, 1942, seriously damaged. The railway company admitted liability and tendered Jaffee $2,062.80, plus interest, that being the aggregate amount paid out by Jaffee,—$1,350 for the machines at Manchester, N. H., and $712.80 for freight, loading and unloading charges. Trial was to a jury on special issues, the only one pertinent to this appeal being that of the reasonable cash market value of these machines "immediately before their shipment in July, 1942, and immediately after their arrival in Dallas County, Texas, in August, 1942." The jury found this difference to be $4,706.65, and judgment was entered for Jaffee accordingly; hence this appeal.

Variously stated in nine propositions, the errors asserted relate to the admission of evidence on the issue of market value; and the contention that there was no competent evidence to support the findings of the jury. The first

complains of the testimony of Jaffee that he had spent three years in finding the machines in controversy. Ordinarily such testimony would have no bearing on market value. However, since the issue as to whether there was any market for such machines, and if not, then the actual or intrinsic value thereof was raised both by the pleadings and the evidence; the scarcity of such machines, and the difficulty of Jaffee in finding them for purchase, might be considered on the issue of whether there was an active market therefor. In admitting this testimony, early in the trial, the court expressly limited its consideration by the jury to the question of whether or not there existed a reasonable cash market value for such machines. With this limitation, we must presume, absent any showing to the contrary, that the jury considered such testimony, if at all, for the purpose only directed by the court.

■ Appellant next complains of the admission, over its objection, of the testimony of Jaffee that after he had purchased these machines in New Hampshire, he returned to Dallas and erected a building in which to use same, at a cost to him of $4,800. Obviously the cost of such building would be inadmissible and wholly incompetent to prove market value. Jaffee, as shown by its pleadings, sought recovery on the bases: 1. of market value; 2. if they had no market value, then on their real or actual value; and 3. if that could not be established, then the value of such machines to the plaintiff. There was no pleading, however, of special damages to the plaintiff, or of any items showing their special value to the plaintiff, which would put the railway company on notice that the plaintiff was claiming such special damages. Consequently, on no theory of the case was such testimony admissible; and it was erroneous, under the pleadings to admit it, as the court evidently did, on the issue of the value of these machines to the plaintiff. At the time such testimony was offered, it had not been shown that there was no market value for such machines; nor that their actual or intrinsic value could not be established; both of which must be negatived before resort can be had to their worth to the owner. International-G. N. v. Casey, Tex.Civ.App., 46 S.W.2d 669; Pioneer Bldg. & Loan Ass'n v. Compton, Tex.Civ.App., 138 S.W.2d 884; 13 Tex. Jur. § 64, p. 151; 17 Tex.Jur. § 161, p. 437; 20 Am.Jur. § 371, p. 339.

■ Complaint is also made of the testimony of witness Upchurch as to the value of these machines based upon the ceiling prices for secondhand machinery fixed by the Office of Price Administration, because such ceiling prices are not evidence of market value. Ordinarily such ceiling prices would not be competent evidence of market value of a particular piece of secondhand machinery. Ceiling prices were not fixed for that purpose, but to hold prices of products down, where the demand was greater than the supply, and to prevent inflation. No case has been cited to us, nor have we found any, wherein this issue has been adjudicated. However, where such ceiling prices of manufactured articles have been fixed, and evidence shows or tends to show, as we think it does in this case, that those desiring to purchase such articles, even though the market be limited, are willing to pay such ceiling prices, we see no sound reason why such prices would not afford some basis for arriving at market value. Certainly they could not be sold for more than such ceiling price without violating the Federal law. They would not, of course, be conclusive on such issue; and would be no deterrent to proof otherwise that such market value of the articles involved, because of their peculiar nature, age, use, depreciation, etc., was less than the ceiling price promulgated for such articles.

■ In the instant case, however, we think that appellant cannot complain of the use of such ceiling prices by the witness as a basis for his opinion as to market value, for the reason that appellant itself introduced, over the objection of appellee, the OPA regulation both on the issue of the annual depreciation in value of these machines; and to show that the maximum price set for secondhand machinery was limited to 55% of the cost

of the nearest equivalent new machine f. o. b. factory. Also that the ceiling price of rebuilt guaranteed machinery or parts was 85% of such cost new f. o. b. factory. The witness Upchurch was owner of cotton mills and engaged in the business of buying and selling secondhand cotton mill machinery both in this country and for export. He had frequently visited the Amoskeag Mills at Manchester, N. H., which had been liquidating since 1936, had sold large volumes of used machinery for them, had inspected and was familiar with the condition of the two machines bought by Jaffee involved in this suit, and stated that they were in excellent condition and in his opinion as good as rebuilt machines. He also testified that the market value of such machines was substantially the same all over the United States; and that the purchaser uniformly paid the freight to destination regardless of where purchased. Under such circumstances it was not error, we think, for him to take into consideration OPA ceiling prices in forming his opinion as to market value. The matters complained of by appellant go to the weight, rather than to the admissibility, of such evidence.

■■ Further complaint is made of the testimony of Upchurch as to the value of such machines for export purposes, on the ground that such testimony is not evidence of market value. As stated above, ceiling prices are not in themselves evidence of market value; but if it be shown that purchasers are willing to pay such prices in the open market, they may become so. Nor is it material, we think, whether such purchases are made for use in the United States, or for export, if, as the witness testified, there was foreign demand for such machines sufficient to create a market in this country. The test is, what such machines would bring on a market in the United States, whether for home use or for export; and if a foreign demand therefor be sufficient to create a market here, it would be an element in determining that market value. Consequently it was not error for the witness to testify as to such demands as affecting the market price; and as entering into his opin-

ion of what was the market value thereof. That would be but one of the items, along with the age, use, scarcity, and condition of the particular machines, entering into market value; and merely went to the weight to be given to the opinion of such witness.

■ Testimony as to cost of repairs is also urged as error; and as being no evidence of market value. The evidence complained of was by the Superintendent of the Murray Company, of Dallas, manufacturers and repairers of cotton ginning machinery generally, estimating the cost of repairing such machines at from $18,-000 to $20,000. However, it was not controverted that these machines were practically totally destroyed in transit, and had a value only as junk or scrap iron, estimated at from $128 to $400. For the Murray Company to repair or restore them to a good working condition, would necessitate the making of forms, dies, etc., to manufacture the needed parts, thus adding unreasonably to such cost. Ordinarily costs of repairs or replacement are not admissible on the issue of market value, but are admissible on the issue of actual or intrinsic value. 17 Tex.Jur. § 168, p. 448. Such testimony was not competent to prove market value. However, because of the fact that these were secondhand machines, not in common use throughout the country, with a very limited market, and because of war time restrictions; neither party to the suit seems to have been sure that a market value for same existed, or if so, could be established by proof. Consequently a wide latitude was permitted by the trial court and taken by counsel for both parties in the introduction of evidence. It was not until the close of all the evidence that the plaintiff filed a trial amendment specifically alleging, and apparently solely relying upon, market value of each of the two machines for recovery of his damages. In submitting only this issue to the jury the trial court instructed them that market value was "the amount of money that one, desiring to sell, but not bound to do so, could within a reasonable time, procure in cash for such property from one who desired to

buy, but was not bound to purchase the property." No complaint is made as to this definition.

While the testimony of Jaffee as to the cost of his building, and the testimony as to the cost of repairs, were clearly not admissible on the issue of market value; such testimony was admitted under pleadings then on file alleging not only market value, but if that were not proven, then intrinsic or actual value, or in the further alternative, value to the owner; and before the trial amendment limited the issue to market value only. The court could appropriately have instructed the jury not to consider the objectionable evidence in answering the question submitted. No request was made to do so, after all issues other than market value were eliminated. We are of the opinion, however, that the court's definition of market value, and what the jury should consider in arriving at such value, in effect excluded from their consideration the evidence complained of, though it did not expressly do so. We conclude, therefore, that the error, if it be so deemed, was harmless.

Nor do we sustain appellant's contentions that there was no evidence to support a finding of market value; or that the evidence is wholly insufficient to support the verdict of the jury. As above stated, the testimony both on direct and cross examination covered a rather wide scope. Appellant particularly emphasizes the fact that one of these machines known as the Saco-Lowell machine, was about 40 years old and made in England; the other known as the Tatham machine was about 25 years old, made in U. S. A.; and that Jaffee paid only $1,350 for both of them f. o. b. at Manchester, N. H. One of its witnesses also testified that such purchase price was their fair market value. Witnesses for appellee, however, who were qualified either by experience in buying and selling machines of similar character; and some of whom were personally familiar with these particular machines, testified that with replacement of lags and bearings and proper care such machines would last from 50 to 60 years.

That the cost of the Tatham machine new in August, 1942, at the factory, was $4,000; that the cost new of the Saco-Lowell machine, including what was designated as a "three-roll calender", with which the machine bought by Jaffee was equipped, was $5,123; that these same two machines were quoted to Jaffee in 1940 at $5,500; that the price ($1,350) at which they were sold to him in 1941 was in part consideration of the fact that Jaffee had theretofore sold for the Amoskeag Mills, the owner, some $30,000 in other equipment to help them liquidate; that the ceiling of 55% of the cost new fixed by OPA for used machines, in view of the condition, care, upkeep and operative condition of these machines, was a fair market price; and that for export, because of the demand in South America, they could be sold for 85% of the cost of new machines.

While there was no established market at any quoted price for such machinery, because of its nature and the necessarily limited number of users thereof, as is the case of articles of commerce generally; it is not contended that they had no market value. On the contrary, after the evidence had taken a rather wide range on actual or intrinsic value, the issues were narrowed to that of market value alone, and only that issue submitted to the jury. In view of the evidence above outlined, it cannot be said that there was not sufficient evidence to support the jury's finding.

We conclude, therefore, that the evidence complained of, obviously offered on the alternative pleadings of actual value, or value to the owner, before those issues had been eliminated and the submission of the case to the jury narrowed solely to market value, was effectually eliminated from jury consideration by the instruction of the court as to what they should consider in answering the question submitted. Had only the issue of market value been pleaded, and the trial had solely on that issue, a different situation would be presented. Under all the circumstances we are of the opinion that no reversible error is shown; and the judgment of the trial court is affirmed.

Affirmed.