**ROSENFIELD et al.   v.   WHITE.**

No. 14672.

Court of Civil Appeals of Texas.

Dallas.

April 2, 1954.

Rehearing Denied April 30, 1954.

Ungerman, Hill & Ungerman, W. Madden Hill, and Leonard E. Hoffman, Jr., Dallas, for appellants.

O. O. Touchstone, Dallas, for appellee.

YOUNG, Justice.

On rehearing, our opinion heretofore filed is withdrawn and set aside; substituting in lieu thereof the following as the original opinion in this case:

The suit in trial court was for conversion of personal property, described generally by appellee (plaintiff) as serviceable second-hand paving equipment; by defendants (appellants), on the other hand, as of merely junk value and "bad junk" at that. Following a jury trial, submission of some 69 issues, and answers thereto, judgment was rendered for plaintiff White and against Benjamin, Israel, and Phillip Rosenfield, copartners under the trade name of Liberty Iron & Metal Company, jointly and severally for $7,150 with 6% interest from July 18, 1952, date of rendition, followed by this appeal. The items in question, nine in number, were owned by plaintiff on or about February 3, 1948, according to the jury, when defendants took possession thereof at Dallas, Texas, and converted same to their own use. The claim was for the market value thereof at said time and place or, in the alternative, for their actual or intrinsic value "to the plaintiff." The articles so allegedly converted are here set forth together with the jury findings of values, both market and intrinsic: (1) Gas Paver, market $750, intrinsic $1,500; (2) Best Tractor, market $700, intrinsic $800; (3) Erie Steam Shovel, market $1,000, intrinsic $1,000; (4) Littleford Asphalt Kettle, market $150, intrinsic $200; (5) asphalt mixing plant, market $1,000, intrinsic $1,250; (6) 20-ton Low Boy Trailer, market $400, intrinsic $500; (7) 16,000-gallon steel tank, market $600, intrinsic $900; (8) clam shell bucket, market $500, intrinsic $500; (9) ½ cubic yard dragline bucket, market $275, intrinsic $500.

Facts leading up to the instant controversy are these: Long prior hereto plaintiff White, a resident of San Antonio, had been engaged in the street paving business with operations extending to several Texas cities. In 1928 he had purchased the equipment along with unfinished municipal contracts of Smith Bros., Dallas, completing these contracts in 1932 or '33; and, with no further work in prospect on account of business conditions, he had stored the equipment in question on an Alamo Street

lot, Dallas; with evidence of due precautions taken for care and safekeeping inclusive of a watchman. There the property remained (certain of the machinery being made use of on city streets for repairs and patch work up to 1937) until February 19, 1948. Defendants' conversion through individuals designated as Weeks and Johnson, not parties to this suit, is alleged to have occurred around above date; the property being purchased by the Rosenfields from Weeks on basis of scrap iron or junk in two transactions for the sum of $700. Aside from the issue of conversion, involved in defendants' method of acquisition and possession of the articles in dispute, this extensive record and briefs of the parties deal almost entirely with value of these articles and the legal measure by which such value may be properly determined.

In the same connection plaintiff's witness Hughes testified to a cash market value of the property on February 3, 1948, giving amounts item by item and totaling $8,350; one O'Neal testifying to a bulk cash market valuation of between twelve and thirteen thousand dollars; the testimony of plaintiff White on the same subject, over objections, being as follows:

"Q. Mr. White, to make it as plain set-up as possible, take each item and give us what you say is the actual or intrinsic value to you. A. The Koering mixer I say is $2,500.

"Q. Speak out louder so the jury can hear you. A. The Koering mixer, I say, is $2,500; the Best tractor $500. * * *

"Q. Go ahead with the next item. A. Erie Steam Shovel.

"Q. You have not told us about the Best Tractor. A. I think I did. I will say it again. The Best tractor, I say, was worth $500. The Erie steam shovel, I say, worth $5,000. The Littleford Asphalt Kettle, $1,000. The Double Drum Blake Mixing Plant, complete, I say is worth $1,000. 1 20-ton Low Boy Trailer, I say is worth $750. One 16,000 gallon steel tank, 3/16", I

say is worth $2,000. 6,000 gallons fluxing oil I say is worth ten cents a gallon, or $600. One 1/2" cubic yard clam shell bucket I say is worth $500. One cubic yard dragline bucket I say $500. 700 lineal feet of 600 pound rail at $40 per ton would be $280, which I say is its value, making a grand total of $14,630, on the outfit." (The items of 6,000 gallons fluxing oil and 700 lineal feet of railroad iron were disposed of by the jury adversely to plaintiff.)

In direct conflict with the foregoing valuations, testimony of numerous witnesses on behalf of defendants was to effect that the property in fact was of no more than junk or scrap iron value, definitely estimated at from $13 to $17 per ton.

As already stated, plaintiff sought recovery on basis of cash or market value or, in the alternative, of actual or intrinsic value to him. Reasonable cash market value was defined in the court's charge as "the amount of money that one desiring to sell, but not bound to do so, could within a reasonable time procure in cash for such property from one who desired to buy, but was not bound to purchase the property." The actual value or intrinsic value was defined as "the real worth, in money, if any, of the property *to the owner* for the purpose for which such property was used or was capable of being used in the future by the owner at the time and place inquired about." (Emphasis ours.) Issue No. 1 related to one Koering 21–E Gas Paver, No. 10,813; and preliminary to all issues concerning values of the articles sued for was the following form of question: "Do you find from a preponderance of the evidence that on or about February 3, 1948 the property described * * * had a cash market value in Dallas, Texas?". And, "Do you find from a preponderance of the evidence that on or about February 3, 1948 the property described * * * had an actual or intrinsic value, as that term is defined herein?" And further relating to all issues on actual values, the following instruction, requested by defendants, was by the court refused: "By the term 'actual or intrinsic value' as used in this charge, is meant the

usual selling price at the place where the property is located at the time its value is to be ascertained, which would be offered by a willing purchaser to a willing seller in its condition then existing."

■ Since compensation to the injured party is as a general rule the judicial objective in award of damages, it is ordinarily held in an action for loss of or injury to personal property that the market value of the property is the proper measure of damage; the theory being that the injured party is made whole if he is given money with which he can buy equivalent property in the market place; Sarkesian v. Cedric Chase Photographic Lab., 324 Mass. 620, 87 N.E.2d 745, 12 A.L.R.2d 902; above rule being more specifically stated in International-Great Northern R. Co. v. Casey, Tex.Com.App., 46 S.W.2d 669, 670, as follows: "The primary principle to be applied in awarding damages for negligent injuries to property is that the owner shall have actual pecuniary compensation for the loss sustained. If the action is based upon the loss of the property, the general standard fixed for the measure of damages is the value of the property destroyed or damaged. The rule is settled that, where property is destroyed or injured, which has a market value, this must be shown by the owner as the measure of damages; where it has neither a market value nor a real value, but it is shown what it would cost to replace or reproduce the article, then such cost is the measure of recovery. Where it has neither a market value nor a real value, and it cannot be reproduced or replaced, then in that event it would be proper to show what it was worth to the owner. In other words, what is the actual loss in money sustained by the owner on account of being deprived thereof? 13 Tex.Jur., §§ 62, 63, and 64, and authorities collated thereunder; [Chicago R. I. & G.] R. Co. v. Zumwalt, Tex.Com.App., 239 S.W. 912; [Missouri, K. & T.] Ry. Co. of Texas v. Crews, 54 Tex.Civ.App. 548, 120 S.W. 1110." See also Pioneer Building & Loan Ass'n v. Compton, Tex.Civ.App., 138 S.W.2d 884; Allis-Chalmers Mfg. Co. v. Board, Tex.

Civ.App., 118 S.W. 996; M-K-T Ry. Co. v. Jaffee Cotton Products, etc., Tex.Civ.App., 193 S.W.2d 986. International-Great Northern R. Co. v. Casey, above, cites the earlier case of Missouri, K. & T. Ry. Co. of Texas v. Crews, 54 Tex.Civ.App. 548, 120 S.W. 1110, 1112, a holding to the same effect, that " * * * Where property is destroyed and injured which has a market value, this must be shown as the measure of damages; where it has no market value and a real value is shown, this is the measure of plaintiff's recovery; where it has neither a market value nor a real value, but it is shown what it would cost to replace or reproduce the article, then such costs is the measure of damages. But if the article has no market value nor real value, and it cannot be reproduced or replaced, then in that event it would be proper to show what it was worth to the plaintiff; that is to say, what is the actual loss in money sustained by the owner on account of being deprived thereof; * * *." A well recognized exception to this general rule relates to secondhand household goods and clothing; and for loss of articles in such category it is unnecessary to allege and prove an absence of market value, since the measure of damage was their actual value to the owner at the time of the loss. International & G. N. Ry. Co. v. Nicholson, 61 Tex. 550; Rutherford v. James, 33 N.M. 440, 270 P. 794, 63 A.L.R. 240; 13 Tex.Jur., p. 156, sec. 68, Railway Express Agency v. Baum, Tex.Civ.App., 250 S.W.2d 423.

■ Applicable to the instant suit for conversion of secondhand paving machinery and equipment is the method of recovery set forth in International-G. N. R. Co. v. Casey, supra, rather than the rule of actual or reasonable value to the owner as applied in International & G. N. Ry. Co. v. Nicholson, involving household goods, used furniture and clothing. The distinction is similarly made clear in 13 Tex.Jur., p. 154, sec. 67, under classification "Irreplaceable Goods and Chattels." See M-K-T Ry. Co. v. Jaffee Cotton Products, etc., and Railway Express Agency v. Baum, supra, where the rule of damages

is made dependent on the character of personal property involved. In the latter case, Express Agency v. Baum, the rule of International-G. N. R. Co. v. Casey was deemed inapplicable and the rationale of International & G. N. Ry. Co. v. Nicholson was applied; the subject matter being secondhand clothing, books and furniture.

It is therefore manifest that we have here an erroneous submission of issues on actual or intrinsic value of the property thus found to be converted; the several inquiries in connection with the court's instruction being premised on value of the various articles *to the plaintiff*. And quite pertinent to such improper method of submission is the holding in part of Missouri, K. & T. Ry. Co. of Texas v. Crews, supra: "There are cases in which proof may be allowed as to what a thing may be worth to the plaintiff, but the present is not such a case, and that can only be done where no market value or real or intrinsic value is shown. And as it is the object of the law to allow compensation merely for the injury sustained, therefore in the present case it would seem that mares such as the ones in question had a real value, which plaintiff was entitled to recover; hence it was error to permit him to show that they had a particular or special value to him, in contradistinction to such real value." Directly in point also is Allis-Chalmers Mfg. Co. v. Board, supra, where the rule of International-G. N. R. Co. v. Casey was held to be controlling relative to recovery value of a tractor.

In the discussion thus far we have not overlooked the jury finding that the items of property also possessed cash market values (as that term was defined by the court) in sums total of $5,375; appellee insisting in the alternative to right of affirmance, at least to that amount. In this connection and through several points, appellants argue insufficiency of testimony to support the jury findings on market values; rather conceding in later argument the sufficiency of proof on market values with selling price of the property on basis of junk, in contrast to appellee's claim of a much higher sales value, i. e., values approximating those found by the jury.

It is appellants' position, however, that this cause cannot be affirmed in any event, perforce of numerous procedural errors; the first advanced, relating to the above-quoted testimony of plaintiff concerning value of the property *to him*, without predicate in the record for such estimate of values. As already pointed out and as stated in Pioneer Building & Loan Ass'n v. Compton, supra [138 S.W.2d 886], "Such testimony by a party as to the value of the lost property to him is at best a mere guess by a nonexpert interested witness. The rule permitting such testimony grows out of the necessities of the case and should be resorted to only when other proof is not available." Defendants' motion to strike same, urged on conclusion of testimony on behalf of plaintiff accordingly should have been sustained. (2) Likewise objected to was testimony and exhibit of picture with respect to steam shovels, crane and dragline in operation at Uvalde, Texas; purpose thereof, according to plaintiff's counsel, being "evidentiary" of what equipment of similar character and approximate age and use was now capable of doing. The testimony so offered is of doubtful admissibility under the rather strict application in Texas of the rule of res inter alios acta; tending, as it does, to confuse the jury by injection of collateral and extraneous issues. 17 Tex.Jur., secs. 136–140, pp. 391–399; and scope of the inquiry should have been confined to the equipment under investigation. (3) As bearing an actual or intrinsic value of the property, but over strenuous objection of defendants, the court permitted the introduction in evidence of plaintiff's check of December 15, 1928, carrying the notation, "R. L. White Company Investment Bankers, San Antonio, Texas, Voucher No. 16,304 to Smith Brothers, Inc., Dr. Dallas City Paving Business and equipment, purchase contract dated December 17, 1928, $50,000.00." While this transaction involved at least five of the items in suit and the recited "purchase contract"

finally accounted for as lost or misplaced, that part of the check representing cost of the particular items was not shown except as indirectly developed through extended cross-examination. On issues of market value, testimony with respect to cost of lost property is ordinarily inadmissible. San Antonio Public Service Co. v. Murray, Tex.Civ.App., 59 S.W.2d 851; Id., 127 Tex. 77, 90 S.W.2d 830.

In actions such as this for conversion of secondhand articles (pleading alternative values and measures of damage), the problems confronting the trial court concerning appropriate classification of and limitation upon the usual mass of testimony presented are difficult indeed, as illustrated in M-K-T Ry. Co. v. Jaffee Cotton Products, etc., supra, where by plaintiff's amendment toward close of the trial, all issues were limited to market value. Appellee argues with much force that the errors above outlined, each taken in its own perspective, should be considered harmless with no possible showing of prejudice under the record as a whole; for instance, that the testimony of plaintiff's witness O'Neal on market value of the property as between twelve and thirteen thousand dollars, admitted without objection, rendered innocuous the wholly inadmissible testimony of plaintiff of $14,630 as the actual value of the property to him; that defendants' characterization of the property as "junk" because of its age and condition made relevant the testimony of John White that equipment, similar in kind and age, was being used in his Uvalde mine operation today; and that the error incident to introduction of the $50,000 check, reflecting in part the cost of this property, was waived in view of defendants' exhibit 4 of the same import (affidavit of payment of stock incorporating Southern Paving Company, where even larger valuations were affixed to the same items); also by defensive testimony to the effect that plaintiff had made purchase of the same property from the defunct paving company in 1942 for $4,200.

However, as heretofore pointed out, the court's definition of actual or intrinsic values, in the restriction of same "to the owner," was erroneous. "The 'intrinsic value' of property is 'the true, inherent and essential value of a thing, not depending upon accident, place or person but the same everywhere and to every one.' * * *." Ohio Casualty Ins. Co. v. Stewart, Tex.Civ.App., 76 S.W.2d 873, 878. "While the term 'market value' is not synonymous with 'intrinsic value'—the one meaning the actual price at which the commodity is commonly sold, the other, its true, inherent, and essential value, independent of accident, place, or person, but is the same everywhere and to every one— yet the latter is so generally a factor which enters into the determination of the former that it may be said that a thing which has no intrinsic value is generally without market value. * * *" Chicago, R. I. & P. Ry. Co. v. Clements, 53 Tex. Civ.App. 143, 62 Tex.Civ.App. 152, 115 S. W. 664, 666. And had an instruction on values been given of above or similar import, with testimony in accordance, this cause could have been properly affirmed on basis either of market value or is alternative. Instead, we have the instruction complained of, the trial court overruling defendants' motion to strike plaintiff's testimony relative to value of the property to him. The entire controversy centered on values and, in view of the substantial jury verdict on each of the two theories (alternatively pled), we are unable to conclude that the ruling of the court in question was entirely harmless. Rule 434, Rules of Civil Procedure. At least, the points just under discussion, taken together, present error. Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302.

Defendants' requested instruction in connection with the court's definition of market value was properly refused. Without reciting its contents, the same is obviously to effect that the equipment was merely of junk value as a matter of law. On retrial, as aptly stated by appellee, the matter of whether each item of machinery had market or actual value better than as scrap or "junk," even though it might be obsolescent or might not in some degree

or any degree be able to perform the purposes for which it was originally manufactured, was a question for the jury. Further points of error involve matters that will not likely occur on another trial.

However, on grounds hereinabove stated, the cause is reversed and remanded to the trial court for disposition of issues in accordance herewith and the controlling authority of International-G. N. R. Co. v. Casey, Tex.Com.App., 46 S.W.2d 669.

Reversed and remanded with instructions.