

NUMBER 13-15-00081-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**JUAN GABRIEL ESPRONCEDA,** **Appellant,**

**v.**

**SYLVIA SUE HANDY ESPRONCEDA,** **Appellee.**

## On appeal from the County Court at Law No. 2 of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Longoria**
**Memorandum Opinion by Justice Garza**

This is an appeal from a final decree of divorce between appellant Juan Gabriel Espronceda ("Espronceda") and appellee Sylvia Sue Handy Espronceda ("Handy"). Espronceda argues by five issues that: (1) the pleadings did not support the trial court's order that he pay $4,000 in retroactive child support; (2) the pleadings did not support the

trial court's order that he pay $300,000 in "reimbursement" for Handy's separate property that he allegedly removed from the marital home; (3) the trial court committed a "fundamental abuse of discretion" by accepting Handy's testimony at the final hearing as the "sole basis" for the decree; (4) the evidence was legally insufficient to support the trial court's order that he pay the $300,000 reimbursement; and (5) the trial court abused its discretion by ordering the reimbursement. We reverse and render in part and affirm in part.

## I. BACKGROUND

The parties were married in 1997, had a son in 1998, and separated in 2011. Handy filed her petition for divorce on January 22, 2013, seeking sole managing conservatorship of the child and child support "in the manner specified by the Court." The petition requested that the court award her a disproportionate share of the community estate for various reasons. As to separate property, the petition stated: "Petitioner owns certain separate property that is not part of the community estate of the parties, and Petitioner requests the Court to confirm that separate property as Petitioner's sole and separate property and estate." The petition also contained a section entitled "Reimbursement" that asked the trial court to: (1) reimburse the community estate for payments made from the community estate toward liabilities of Espronceda's separate estate; (2) reimburse Handy's separate estate for payments made from her separate estate toward liabilities of the community estate; (3) reimburse Handy's separate estate for payments made from her separate estate toward liabilities of Espronceda's separate estate; and (4) reimburse the community estate for "the value of community time, talent, toil, and effort expended by [Espronceda] in the management and control of his separate

2

estate . . . ."

The petition further asked for "extraordinary relief" in the form of a writ of possession ordering the child to be delivered to Handy's possession. The petition stated: "As the basis for the extraordinary relief requested below, Petitioner would show that before the filing of this petition Respondent has engaged in the conduct set forth in the affidavit attached as Exhibit A." Exhibit A, an affidavit executed by Handy, stated in part:

> [Espronceda's] continued possession of our son . . . will create and is creating a serious and immediate threat to the child's physical and emotional well-being. Moreover he has only allowed me sparse and infrequent visits with my son. I have reason to believe that both my separate and our community property continues to be at risk while in his care: (1) he has mismanaged my earnings from my separate rental property, and the business known as G&S Mechanic Shop, (2) he has gutted the furnishings and appliances of our home, including valuable fixtures to possibly fuel his drug habit; and (3) that he is secreting my personal belongings and valuable separate and community property.

Following the filing of the petition, the trial court issued a temporary restraining order enjoining Espronceda from having any access to the child. The order did not contain any provision regarding child support.

At a final hearing before the bench on August 11, 2014, Espronceda did not appear but was represented by counsel. Handy appeared at the hearing and testified that, since the time the couple separated, she has cared for the child but Espronceda has not paid any child support. She further testified that Espronceda is currently employed and earns $890.76 in weekly net pay, but she agreed that she had no proof of whether he was employed prior to the time of the final hearing. She agreed with her counsel that she was asking the court for "child support in the minimum sum of at least $200 per month for the 20 months that you have been separated . . . for a total of $4,000 arrearage."

Handy testified that Espronceda was from Mexico and had no personal property

3

of any kind at the time they were married. At her attorney's direction, she compiled a list of her own separate property, and the list was entered into evidence. The eight-page list—entitled "Items Removed From Home"—contained hundreds of items such as appliances, furniture, jewelry, a grand piano, several cars and trucks, a mobile home, two houses, a time share condo, and "G & S Mechanic Shop & all equipment & fixtures." Handy confirmed that her separate property includes the property where the parties lived: a three-acre lot in Weslaco, Texas, which contains a 6,500-square-foot home, an apartment, and two other buildings. She stated that she purchased all of the listed items in 2000, with funds she received prior to the marriage from settlements of two personal injury lawsuits.

Handy stated that she was incarcerated between October of 2010 and December 21, 2012,[1] and that "[a]ll of [the listed property] was missing" when she returned from prison to the Weslaco home. Handy testified that her sister called the sheriff's office to report the missing property; that Espronceda was questioned by police about the items; and that Espronceda had told police "that he had put everything in storage." She stated that Espronceda "stripped my house" and that she had to pay $31,000 for air conditioning units and a water heater "[j]ust so I could move back into the home." She testified that Espronceda has since returned only "a stovetop and a refrigerator." According to Handy, she spent at least $300,000 of her settlement money "for all those things that are on that

---

[1] In his brief, Espronceda asks us to "take judicial notice of Appellant's [sic] convicted crimes of moral turpitude which should have a bearing on her lack of credibility in this case," and he provides two federal district court cause numbers. We may take judicial notice of the records in another court when we are provided with copies of those records. *See San Pedro Impulsora de Inmuebles Especiales, S.A. de C.V. v. Villarreal*, 330 S.W.3d 27, 43 n.12 (Tex. App.—Corpus Christi 2010, no pet.). But Espronceda has not provided us with any criminal record pertaining to Handy. Accordingly, although Handy testified that she was incarcerated, we decline to take judicial notice regarding the reasons for that incarceration.

4

list." She agreed that she was asking the court to make findings that all of this property was her separate property, and that she is entitled to reimbursement from Espronceda. On cross-examination, Handy agreed with Espronceda's counsel that she does not know the current value of the items on the list, but that she believed the current value to be "just as much or greater" than $300,000. She testified: "Well, actually, if I had to replace all of that it would be a lot more than [$]300,000 today because things are more expensive today."

At the conclusion of the hearing, the trial court asked counsel for a "brief recap of what you guys are asking the Court to consider." Handy's counsel explained that Handy was asking the court to: (1) grant the divorce; (2) make Handy sole managing conservator of the child; (3) order Espronceda to pay $786.80 in monthly child support; and (4) order Espronceda to return "any and all properties that he has that are her sole and separate property" or, if it is not returned within 30 days, to pay Handy $300,000 as reimbursement.

The trial court signed a final decree on November 21, 2014, dissolving the parties' marriage, designating Handy as the child's sole managing conservator, and granting Espronceda supervised visitation with the child. The decree further stated, among other things, that Handy "is entitled to child support arrears in the amount of $4,000" and ordered Espronceda to pay that amount to Handy in monthly installments of $100 beginning on September 1, 2014. The decree further stated as follows:

> If Respondent, [Espronceda] does not return all the property listed in Exhibit #1 within 30 days of the signing of this Decree, he is obligated to pay the Petitioner, [Handy] $300,000.00 within 3 months of the signing of this decree, which represents the value of the Petitioner's sole and separate property which was taken from the home listed above on or about the year 2011 by the Petitioner [sic].

"Exhibit 1," attached to the decree, is a copy of the same list of Handy's separate property

5

that was introduced into evidence at the final hearing.

Espronceda filed a motion for new trial arguing that the evidence was legally and factually insufficient to support the award of retroactive child support or the reimbursement for separate property allegedly taken from the marital home. The motion for new trial was overruled by operation of law, *see* TEX. R. CIV. P. 329b(c), and this appeal followed.[2]

## II. DISCUSSION

### A. Pleading Sufficiency

By his first two issues, Espronceda argues that his constitutional right to due process was violated because the trial court ruled upon two issues—retroactive child support[3] and reimbursement for property allegedly taken from the marital home—which were not raised in the pleadings.

Pleadings must give "fair notice of the claim involved" to the opposing party. *See* TEX. R. CIV. P. 45(b), 47(a). When a pleading is not challenged by special exceptions, as here, we construe it liberally in favor of the pleader. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000). We look to the pleader's intent and supply every fact "that can reasonably be inferred from what is specifically stated." *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982).

Even when not raised by the pleadings, if issues "are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in

---

[2] Handy has not filed a brief to assist us in the disposition of this appeal.

[3] Although the final decree characterized the $4,000 as "arrears," there can be no arrearages absent the failure to comply with an existing support order. *See In re J.G.Z.*, 963 S.W.2d 144, 148 (Tex. App.—Texarkana 1998, no pet.). It is undisputed that there was no support order existing prior to the final divorce decree in this case.

6

the pleadings." TEX. R. CIV. P. 67; *Gamboa v. Gamboa*, 383 S.W.3d 263, 271 (Tex. App.—San Antonio 2012, no pet.). Trial by consent is intended to cover only the exceptional case in which it clearly appears from the record as a whole that the parties tried the unpleaded issue; it should be applied with care and is not intended to establish a general rule of practice. *Guillory v. Boykins*, 442 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *In re A.B.H.,* 266 S.W.3d 596, 600 (Tex. App.—Fort Worth 2008, no pet.); *Greene v. Young*, 174 S.W.3d 291, 301 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). To determine whether an issue was tried by consent, we examine the record not for evidence pertaining to the issue, but rather for evidence that the issue was actually tried. *Guillory*, 442 S.W.3d at 690; *Greene*, 174 S.W.3d at 301. A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was present in the case, and the other party failed to make an appropriate complaint. *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 567 (Tex. App.—San Antonio 2011, no pet.). When evidence relevant to both a pleaded and an unpleaded issue has been admitted without objection, the doctrine of trial by consent should generally not be applied. *Johnston v. McKinney Am., Inc.*, 9 S.W.3d 271, 281 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).

### 1. Retroactive Child Support

Specific notice is required when retroactive child support is being sought. *Martinez v. Martinez*, 61 S.W.3d 589, 590 (Tex. App.—San Antonio 2001, no pet.); *In re J.G.Z.*, 963 S.W.2d 144, 148 (Tex. App.—Texarkana 1998, no pet.). Handy requested child support "in the manner specified by the Court" but did not specifically ask for the support

7

to be made retroactive. Accordingly, even when liberally construed, the pleadings did not give fair notice that Handy was seeking an award of retroactive child support. *See Taylor v. Taylor*, 337 S.W.3d 398, 402 (Tex. App.—Fort Worth 2011, no pet.) (op. on reh'g) (finding mother's request that father "be ordered to make payments for the support of the child" and for "child support . . . while this case is pending" insufficient to support award of retroactive support, noting that "[n]othing in [mother's] pleading even hints that she sought child support for dates prior to the date of her original petition"); *Martinez*, 61 S.W.3d at 590 (finding trial court erred in awarding retroactive support "in the absence of a pleading requesting that relief"); *but see In re Q.D.T.*, No. 14-09-00696-CV, 2010 WL 4366125, at *3 (Tex. App.—Houston [14th Dist.] Nov. 4, 2010, no pet.) (mem. op.) (concluding that pleadings were sufficient to support award of retroactive support where action was initiated "for the purpose of adjudicating parentage and child support" and mother requested "payments for the support of the child in the manner specified by the Court," noting that the family code "specifically provides for an award of retroactive child support on a finding of parentage").

We further find that the issue was not tried by consent. Handy testified at the final hearing that Espronceda was earning $890.76 per week and that the child support amount pursuant to the applicable guidelines would be $786.80 per month. The following colloquy then took place:

Q [Handy's counsel]    Now, Ms. Handy, since you separated, has Mr. Espronceda provided any child support?

A    No.

Q    Okay. Now, we have no proof of what he was making or whether he was employed or not up to this time; is that correct?

8

A          That's correct.

Q          So are you asking child support in the minimum sum of at least $200 per month for the 20 months that you have been separated?

A          Yes.

Q          And that would be child support arrearage of $4,000?

A          Yes.

Q          And the sum of $200 is perhaps even less than what the minimum schedule would be pursuant to the family guidelines?

A          That is correct.

Q          But nonetheless, you're asking the Court to just award $200 per month for the 20 months for a total of $4,000 arrearage?

A.         That's correct.

Handy's counsel repeatedly referred to an "arrearage," but there was no explicit mention made of retroactive support. Moreover, when summarizing Handy's requests at the conclusion of the hearing, counsel did not mention retroactive support but instead only mentioned the $786.80 in monthly support that Handy was requesting on a prospective basis. The record does not clearly show that the unpleaded issue of retroactive support was tried by the parties, nor does it show circumstances indicating both parties understood the issue was present in the case. *See Guillory*, 442 S.W.3d at 690; *Prize Energy Res., L.P.*, 345 S.W.3d at 567. Accordingly, we conclude that the issue was not tried by consent. Espronceda's first issue is sustained.

**2.     Reimbursement for Allegedly Removed Separate Property**

Next, as to the award of $300,000 in reimbursement for Handy's separate property that Espronceda allegedly removed from the marital home, we cannot say that the

9

pleadings gave fair notice of this claim. Although Handy mentioned in her supporting affidavit that Espronceda "is secreting my personal belongings and valuable separate and community property," this reference was made only in the context of her request for a writ of possession with regard to the child. The section of the petition entitled "Reimbursement" did not refer to Espronceda's alleged removal of items from the home. The petition does not request, implicitly or explicitly, damages for conversion or any other relief related to Espronceda's alleged removal of Handy's personal property.

Nevertheless, we find no due process violation because the issue was clearly tried by consent. Throughout the final hearing, Handy and her counsel emphasized that all of the property contained in her list of "Items Removed From Home" was her separate property, acquired prior to the marriage, and that all of the items were missing from the home when she returned from prison. Handy testified that Espronceda told police he had the items put into storage. She repeatedly requested the trial court to compel Espronceda to "reimburse" her for the items. Espronceda's counsel cross-examined Handy about the value of the items and other issues, but did not lodge any objection regarding whether the issue had been raised by the pleadings. Handy's counsel explicitly stated at the conclusion of the hearing that Handy sought an order compelling Espronceda to return her separate property, and if he does not do so within thirty days, to pay her $300,000 in reimbursement. In his closing argument, Espronceda's counsel disputed the value of the items but did not argue that the issue was not supported by the pleadings. Under these circumstances, we find that both parties' attorneys understood that the issue of reimbursement for allegedly removed separate property was present in this case, and the

10

issue was therefore tried by consent. *See Guillory*, 442 S.W.3d at 690; *Prize Energy Res., L.P.*, 345 S.W.3d at 567. Espronceda's second issue is overruled.

## B. Evidentiary Sufficiency

By his fourth and fifth issues, Espronceda contends that there was legally insufficient evidence to support the conditional award of $300,000 in "reimbursement" for Handy's separate property that Espronceda allegedly removed from her home. He specifically contends that the only evidence as to the value of the property was Handy's testimony regarding the replacement value of the items, and that there was no evidence as to the fair market value of the items.

In a bench trial where no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989). When the appellate record includes the reporter's and clerk's records, as here, these implied findings are not conclusive and may be challenged for evidentiary sufficiency at the appellate level. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). A legal sufficiency challenge will be sustained when the record shows either: (a) a complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). We view the evidence in the light most favorable to the finding, indulge every reasonable inference in support of the finding, credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* at 807, 822.

11

In determining damages for conversion, the trier of fact has discretion to award damages within the range of evidence presented at trial. *Gulf States Utilities Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002). Ordinarily, the measure of conversion damages is the fair market value of the property at the time and place of the conversion. *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 146–48 (Tex. 1997); *Wise v. SR Dallas, LLC*, 436 S.W.3d 402, 412 (Tex. App.—Dallas 2014, no pet.) (defining fair market value as the price that the property would bring when it is offered for sale by one who desires, but is not obligated to sell, and is bought by one who is under no necessity of buying it). And "[e]vidence of the past purchase price alone is legally insufficient to support a finding as to the property's market value at a later date." *DZM, Inc. v. Garren*, 467 S.W.3d 700, 704 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Lee v. Dykes*, 312 S.W.3d 191, 195–99 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *but see Burns v. Rochon*, 190 S.W.3d 263, 270–71 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (finding sufficient evidence to support conversion damages where it was "not entirely clear from the trial court's findings of fact whether damages were measured using fair market or actual value" and the only evidence was owner's uncontroverted testimony as to purchase price).

But when converted property has no readily ascertainable fair market value, the measure of damages is the actual value of the property to the owner at the time of its loss. *Crisp v. Sec. Nat'l Ins. Co.*, 369 S.W.2d 326 (Tex. 1963); *Wise*, 436 S.W.3d at 412. In such circumstances, purchase price and replacement cost are probative of actual value. *Wise*, 436 S.W.3d at 412; *Moore v. Moore*, 383 S.W.3d 190, 198 (Tex. App.—Dallas 2012, pet. denied) ("While market value is usually the best evidence of the value of personal property, in the absence of a market value, the actual value of the property to

the owner may be shown."); *Wutke v. Yolton*, 71 S.W.2d 549, 552 (Tex. Civ. App.—Beaumont 1934, writ ref'd) (holding that purchase price is probative of actual value).

Courts have held that for "household goods" and "personal effects," "it is unnecessary to allege and prove an absence of market value, since the measure of damage was their actual value to the owner at the time of the loss." *Rosenfield v. White*, 267 S.W.2d 596, 599 (Tex. Civ. App.—Dallas 1954, writ ref'd n.r.e.); *see Gulf States Utilities Co.*, 79 S.W.3d at 566 (noting that "for household goods having no recognized market value," "the trier of fact may consider, in determining the actual value to the owner at time of loss, the original cost, cost of replacement, . . . as well as any other reasonably relevant facts"); *Allstate Ins. Co. v. Chance*, 590 S.W.2d 703, 704 (Tex. 1979); *Crisp*, 369 S.W.2d at 329 ("It has long been the rule generally in this state that to compensate for the loss of used household furniture and personal effects the measure of damages is the value of such goods to the owner, that is, the actual loss in money he has sustained by being deprived of articles which are especially adapted to the use of the individual and his family.").

"No matter what measure of damages is employed in establishing the value of the converted property, it is well settled that the owner of property can testify as to his opinion regarding the value of his own property." *Burns*, 190 S.W.3d at 271. Even if the owner's testimony is "halting and indefinite," it nonetheless will be sufficient to sustain a verdict when there is no controverting evidence. *Id.* at 270–71.

Here, Handy testified that she spent at least $300,000 of her separate funds to purchase the items contained in her list of "Items Removed From Home" and that it would

13

cost more than $300,000 to replace all of the items today.[4]  The items in the list are predominantly household goods and personal effects; therefore, Handy did not need to establish the absence of market value.  *See Rosenfield*, 267 S.W.2d at 599.  Instead, her testimony regarding purchase price and replacement cost was probative as to the actual value of the items at the time of the conversion.  *See Gulf States Utilities Co.*, 79 S.W.3d at 566; *Chance*, 590 S.W.2d at 704; *Crisp*, 369 S.W.2d at 329.  And, the trial court's valuation of $300,000 was in accordance with Handy's uncontroverted testimony.  Therefore, the evidence was sufficient to support the conditional award of $300,000 in "reimbursement" should Espronceda not return the listed items within the time specified in the decree.  *See Burns*, 190 S.W.3d at 270–71.

Espronceda's fourth and fifth issues are overruled.

### III. CONCLUSION

We reverse that portion of the final divorce decree awarding Handy $4,000 in retroactive child support, and we render judgment that Handy take nothing by way of her claims for retroactive child support.  The remainder of the decree is affirmed.

DORI CONTRERAS GARZA
Justice

Delivered and filed the
9th day of June, 2016.

---

[4] Espronceda contends by his third issue that Handy's testimony "was riddled with inaccuracies and permeated with contradictions" and, therefore, "[i]t was an abuse of discretion and plain error for the trial court to base the entirety of the final decree of divorce on this testimony."  However, the trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony.  *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).  This issue is overruled.