### Liza GREENE and Corey Mills, Appellants,

v.

### Patsy YOUNG, Appellee.

### No. 01–04–00679–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 2, 2005.

Rehearing Overruled July 20, 2005.

Lynn S. Kuriger, Pamela E. George, Houston, TX, for Appellants.

Sallee S. Smyth, Short & Jenkins, L.L.P., Houston, TX, for Appellee.

Panel consists of Justices TAFT, ALCALA, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

In this family law case, attorneys, Liza Greene and Corey Mills ("appellants"), appeal a sanctions order signed by the trial court against them.[1] Of the seven issues presented by appellants, the dispositive issues that we address are whether the trial court abused its discretion by sanctioning appellants on grounds on which appellants had no notice and whether the trial court had jurisdiction to sanction appellants under Texas Rule of Civil Procedure 13 for signing a motion filed in federal bankruptcy court.

We reverse and render.

### Factual and Procedural Background

On November 26, 2001, the trial court signed a final decree of divorce between Ronald Eugene Repine ("Ronald") and Elizabeth Ann Pollard–Repine ("Elizabeth"). The decree ordered Ronald to make bimonthly child-support payments of $561 to Elizabeth. When Ronald failed to make these payments, Elizabeth retained attorney, and appellee in this appeal, Patsy Young ("Young"), who filed a motion for enforcement by contempt for failure to pay child support against Ronald.

On June 26, 2003, the trial court signed an order holding Ronald in contempt for failure to pay child support and ordered him confined to jail for six months and then from day to day until he purged himself of contempt. The trial court also ordered Ronald to pay $22,858.75 in child support arrearage and $2,026.75 in attorney's fees to Young.[2]

On July 1, 2003, Ronald filed a voluntary petition in bankruptcy. Attorney Corey Mills represented Ronald in the bankruptcy proceeding. Mills also represented Ronald in the family court until early August 2003, when Liza Greene became Ronald's family law attorney. Margaret McClure represented Elizabeth in bankruptcy court and Young continued to represent Elizabeth in family court.

During July and August 2003, the parties engaged in negotiations to settle the

---

1. On the agreement of the parties, the trial court signed an order severing the sanctions order from the remainder of the case; thus, it is a final judgment for purposes of this appeal.

2. The $2,026.75 owed Young is designated in the order as "additional child support."

child support claims. As part of this process, Young offered to settle if Ronald deeded his home to Elizabeth and paid Young's attorney's fees. Mills responded that Ronald could not deed his home because it was part of the bankruptcy estate.

Elizabeth and Ronald ultimately reached an agreement that was memorialized in an "Agreed Order Lifting Stay," which was signed by the bankruptcy court on September 11, 2003. In making this agreement, Mills acted as Ronald's counsel and McClure acted as Elizabeth's attorney.

The Agreed Order Lifting Stay provided that the bankruptcy stay would be lifted as to Elizabeth. It further provided that Ronald would deed his home to Elizabeth, and the property would then be sold. The sale proceeds would first pay the outstanding balance on the mortgage and then any attorney's fees secured by the deed of trust. The remaining proceeds would be applied to the child support arrears owed to Elizabeth and the attorney's fees owed to Young. The order also provided that the family court would determine whether Ronald should be released from jail.

On September 12, 2003, the family court heard Ronald's motion to suspend his incarceration. Although Elizabeth testified that she wanted Ronald released from jail, Young told the family court that she opposed Ronald's release. The trial court denied Ronald's motion on the basis that the Agreed Order Lifting Stay placed payment of Ronald's other debts, including his attorney's fees, before payment of the child support arrears.

On September 23, 2003, Ronald's father died. Mills and Greene worked with Elizabeth and her bankruptcy attorney, McClure, to secure Ronald's release to attend the funeral and be with his mother. Young prepared an "Agreed Amended Release Order," which provided for Ronald's release. The order provided, *inter alia,*

that Ronald would deed his home to Elizabeth, pay the child support arrearage, pay Young her attorney's fees, and agree that he would not pursue any action against Young or Elizabeth for violating the bankruptcy stay. In correspondence sent with the proposed order of release, Young stated that she would appear in court to present the order on the condition that she first receive a certified check from Ronald, paying a portion of her attorney's fees. Ronald and his attorneys declined Young's offer and turned to the bankruptcy court, seeking to secure Ronald's release from jail.

Elizabeth, as movant, and Ronald, as debtor, with the assistance of their counsel McClure, Mills, and Green, filed a "Joint Motion to Enforce Agreed Order Lifting Stay and Request for Additional Relief" ("Joint Motion") in the bankruptcy court. The Joint Motion alluded that the family court had overstepped its bounds in refusing to release Ronald in light of the parties' agreement that was reflected in the earlier order signed by the bankruptcy court, which lifted the stay as to Elizabeth. The Joint Motion contended, in relevant part, as follows:

> The [family court's] ruling had been primarily at the request of the family counsel for [Elizabeth] Patsy Young, who, despite direction from her client, [Elizabeth], that she wishes [Ronald] to be released, has continually insisted that her attorney fees MUST be paid in full before [Ronald] is released from jail. Apparently, Patsy Young believes that, despite the priority of claims set forth per the Bankruptcy Code, she is more of a priority than secured creditor Ford Motor Credit or the children of [Ronald] and [Elizabeth], each of whom have made claims in this case. Additionally, Ms. Young's refusal to heed her client's requests out of her own self-interest in

immediately obtaining her attorney fees is a conflict of interest and, further, appears highly unethical.

. . . .

. . . The only obstacle to [Ronald's] release is a family court Judge who does not understand that [Ronald] has a right to pay his child support arrears, including attorney fees owed to Patsy Young, via his Chapter 13 Plan.

The bankruptcy court conducted a hearing on the Joint Motion on September 24, 2003. In attendance were Elizabeth, McClure, Greene, and Mills. The bankruptcy court did not rule on the Joint Motion. Instead, based on the information supplied by the attorneys in the Joint Motion, the bankruptcy court issued an order, providing that Young was to appear before the bankruptcy court on September 25, 2003, and show cause why she should not be held in contempt for violating the bankruptcy stay. The bankruptcy court explained, "I want that lawyer [Young], that creditor, apparent creditor, to show cause why she shouldn't be held in contempt for continuing to assert a prepetition debt, which is resulting in harm to the debtor and therefore harm to the estate and the viability of the bankruptcy case."

Mills attempted to personally serve Young with the order to appear and show cause, but Young knocked the order from Mills's hands. Mills, Greene, and McClure appeared at the show cause hearing on September 25. However, Young did not appear and the bankruptcy court issued an order for the United States Marshal to arrest Young. On September 29, 2003, Young, represented by counsel, surrendered herself at the bankruptcy courtroom. She was then arrested, fingerprinted, photographed, and returned to the courtroom for the hearing. The bankruptcy court issued no further orders, but warned Young that she should take no action in pursuing her attorney's fees against Ronald that would violate the bankruptcy stay.

On October 6, 2003, Young filed a motion in the family court to withdraw as Elizabeth's counsel and a "Motion for Rule 13 Sanctions" against Mills, Greene, and McClure, for signing the Joint Motion filed in bankruptcy court. Young contended that she could no longer represent Elizabeth because Elizabeth had "taken an adversarial position" to her. Young claimed that certain representations in the Joint Motion were inaccurate and that the motion was groundless. Relying on Rule 13, Young contended that the motion was brought in bad faith and for purposes of harassment. Young asserted that statements made in the Joint Motion were defamatory to her and to the family court judge. Young requested sanctions against Mills, Greene, and McClure based on the alleged Rule 13 violation and based on the claimed defamatory statements in the Joint Motion. Other than Rule 13 and the defamatory nature of the statements made in the Joint Motion, no other basis for sanctions was raised in Young's motion.

The family court held a hearing on the motion to withdraw and the motion for sanctions on October 22 and 23, 2003. Young, McClure, Greene, and Mills each testified at the hearing. Although offered as exhibits, the transcripts of the bankruptcy court hearings conducted on September 24, 25, and 29, 2003 were not yet available at the time of the sanctions hearing.

At the end of the hearing, the family court granted Young's motion to withdraw. The court told the parties that it would announce a date for ruling on Young's Motion for Rule 13 Sanctions after it received the bankruptcy court transcripts.

On March 18, 2004, the family court signed an "Order of Sanctions" and read it into the record. The family court sanctioned Mills and Greene, but concluded that it did not have jurisdiction to sanction McClure. In relevant part, the family court found that numerous statements made by appellants in the Joint Motion and during the September 24th and 25th bankruptcy court hearings were "false" and that appellants had misled the bankruptcy court. The court also found that appellants had "caused" Young to be arrested by the United States Marshal. The family court based the sanctions against Mills and Green not only on Rule 13, as had been pled by Young in her motion, but also on its inherent power to sanction and on violations of Texas Civil Practice and Remedies Code Chapter 10 ("Chapter 10"), the Texas Disciplinary Rules of Professional Conduct ("Disciplinary Rules"), and the Texas Lawyers Creed. The family court ordered that Mills and Greene (1) jointly pay Young $5,000; (2) enroll in eight hours of legal ethics courses; (3) perform 40 hours of community service; (4) pay $500 to the Texas Center for Ethics and Legal Professionalism; and (5) write and sign letters of apology to the bankruptcy judge, the family court judge, and Young.

In their motion for new trial, appellants challenged the sanctions order on the basis that they had not been given notice that the trial court would exercise its inherent authority to sanction. Appellants also objected that imposing sanctions based on Chapter 10, the Disciplinary Rules, and the Texas Lawyers Creed was improper because these grounds were not pled by Young in her motion for sanctions. In addition, appellants complained that it was improper for the trial court to base its Rule 13 sanctions on the Joint Motion—a filing made in bankruptcy court. Following a hearing, the trial court denied the motion for new trial.

At the request of appellants, the family court also filed findings of fact and conclusions of law. The court made clear that the sanctionable conduct was not only the "false" statements made in the Joint Motion, but also the "false" statements made by Greene and Mills at the September 24th and 25th bankruptcy court hearings, and Mills's and Greene's conduct that "caused" Young's arrest and detention by the federal authorities. The family court reiterated that it had inherent authority to sanction Mills and Greene. The court indicated that it was relying on the Disciplinary Rules and the Lawyers Creed as "ethical guideposts." The family court concluded that appellants had engaged in conduct that violated Rule 13, Chapter 10, unspecified provisions of the Disciplinary Rules, and the Lawyers Creed.

### Standard of Review

■ We review the trial court's imposition of sanctions under an abuse of discretion standard. *See Kings Park Apts., Ltd., v. Nat'l Union Fire Ins. Co.,* 101 S.W.3d 525, 540 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (applying abuse-of-discretion standard to review Rule 13 sanction award made pursuant to court's inherent power); *Gaspard v. Beadle,* 36 S.W.3d 229, 239 (Tex. App.-Houston [1st Dist.] 2001, pet. denied) (reviewing trial court's award of sanctions under abuse-of-discretion standard); *Finlay v. Olive,* 77 S.W.3d 520, 524 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (determining whether trial court abused its discretion in awarding sanction under Chapter 10). The test for determining if the trial court abused its discretion is whether the trial court acted without reference to any guiding rules or principles. *Koslow's v. Mackie,* 796 S.W.2d 700, 704 (Tex.1990).

## Propriety of Sanctions Order

### A. Notice

■ In their second issue, appellants contend that the family court abused its discretion because the court improperly granted sanctions based on authority other than Rule 13 and for conduct other than the appellants' signing and filing of the Joint Motion.

■ The due process clause of the United States Constitution limits a court's power to sanction. *In re Bennett*, 960 S.W.2d 35, 40 (Tex.1997) (orig. proceeding). For this reason, the imposition of sanctions requires that "notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *In re L.A.M. & Assocs.*, 975 S.W.2d 80, 83 (Tex.App.-San Antonio 1998, orig. proceeding) (quoting *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988)). The relevant sources for the sanctions imposed in this case—Rule 13, Chapter 10, and the court's inherent power—expressly require that notice be given to the party subject to the sanctions.[3]

■ When a party or attorney violates Rule 13, the court shall impose sanctions on a motion or on the court's own initiative, "after notice and hearing." TEX.R.

CIV. P. 13. With regard to Chapter 10 sanctions, section 10.003 provides, "The court shall provide a party who is the subject of a motion for sanctions under Section 10.002 notice of the allegations and a reasonable opportunity to respond to the allegations." TEX. CIV. PRAC. & REM.CODE ANN. § 10.003 (Vernon 2002). The traditional due process protections of notice and hearing are also required before a trial court can impose sanctions on a party pursuant to its inherent power to sanction. *Kutch v. Del Mar College*, 831 S.W.2d 506, 511 (Tex.App.-Corpus Christi 1992, no writ).

Young's Motion for Rule 13 Sanctions expressly requested sanctions "pursuant to" Rule 13 based on appellants' signing of the Joint Motion, which Young alleged contained "defamatory" statements. Young's motion made no mention of Chapter 10, the family court's inherent power to sanction, the Disciplinary Rules, or the Lawyers Creed, which were cited by the family court as legal bases for the sanctions. Other than the signing of the Joint Motion, Young's motion did not request sanctions for appellants' conduct at the bankruptcy court hearings; however, the family court's order makes clear that it sanctioned appellants for such conduct, particularly representations made by ap-

---

**3.** Though mentioned in the sanctions order and in the findings of fact and conclusions of law, the Disciplinary Rules and the Lawyers Creed are cited by the family court only as "ethical guideposts" that appear to have been relied on by the court in conjunction with its inherent power to sanction. *See, e.g., In re Terminix Int'l, Co.*, 131 S.W.3d 651, 653–54 (Tex.App.-Corpus Christi 2004, orig. proceeding) (imposing sanctions pursuant to court's inherent power to sanction for conduct in course of original proceeding that violated Texas Rules of Professional Conduct); *Johnson v. Johnson*, 948 S.W.2d 835, 840–41 (Tex. App.-San Antonio 1997, writ denied) (relying on appellate court's inherent power to discipline attorney misconduct, which violated Texas Rules of Professional Conduct, to support imposing sanctions against attorney for disparaging remarks about trial court). The Disciplinary Rules and the Lawyers Creed do not appear to be cited by the family court as independent sources of sanctions apart from its inherent power to sanction. Indeed, the parties cite to no provisions in the Disciplinary Rules or the Lawyers Creed, and we know of none, that empower or otherwise operate as a source of authority for a court to impose sanctions apart from its inherent power to do so.

pellants during the bankruptcy court hearings.

Because they received notice that sanctions were sought only under Rule 13, we agree with appellants that the family court improperly relied on Chapter 10, the Disciplinary Rules, the Lawyers Creed, and its inherent power to impose sanctions. Furthermore, the family court improperly sanctioned appellants for their statements made at the bankruptcy court hearings because appellants had no notice that such conduct was under consideration for sanctions.

In reaching this conclusion, we find two cases to be instructive. The first is *Ball v. Rao* in which the Fort Worth Court of Appeals concluded that the trial court erred by imposing sanctions pursuant to Texas Civil Practice and Remedies Code Chapters 9 and 10 and Rule 13, when the sanctions request had only requested sanctions under Chapter 10 and Rule 13. 48 S.W.3d 332, 338 (Tex.App.-Fort Worth 2001, pet. denied). Because the parties seeking sanctions had not based their request on Chapter 9, in addition to Chapter 10 and Rule 13, the appellate court sustained the appellants' challenge on this issue. *Id.*

Similarly, this Court has reversed a sanctions award when the sanctioned party did not have notice of the conduct ultimately sanctioned. In *Bisby v. Dow Chem. Co.*, Dow sought exemplary damages against Bisby for recording of improper liens, for her refusal to remove the cloud on Dow's title, and for returning a letter sent to her by Dow. 931 S.W.2d 18, 21 (Tex.App.-Houston [1st Dist.] 1996, no writ). Bisby did not attend trial and the trial court signed a default judgment against her. *Id.* at 20. In its judgment, the trial court imposed sanctions against Bisby based on her "filing the three pleadings in this case entitled 'This affidavit is a

refusal for Cause Without Dishonor U.C.C. 3–501 and Notice of Default and Notice of Acquiescence of Lien Debtors to Validity of Bona Fide Liens.'" *Id.* at 21. Bisby appealed by writ of error, challenging the sanctions award based on lack of notice. *Id.* Dow contended that, because it had included a provision in its original petition that requested exemplary damages, Bisby was on notice that sanctions may be levied against her. *Id.* We concluded that the trial court erred by assessing sanctions because Dow did not seek sanctions based on Bisby's filing of the three pleadings mentioned in the trial court's judgment. *Id.* In reversing the sanctions award, we wrote,

> Bisby was denied the opportunity to have a hearing and present evidence to demonstrate that her pleadings were not groundless, brought in bad faith or meant to harass. Because Bisby was not put on notice that sanctions would be imposed upon her for filing the three above-described pleadings, the trial court erred in assessing sanctions.

*Id.*

On appeal, Young contends that her motion for sanctions was sufficient to support the sanctions award on all grounds relied on by the family court in its order. Young points out that Texas follows a "fair notice" standard for pleading, which looks to whether the opposing party can ascertain, from the pleading, the nature and basic issues of the controversy and what testimony will be relevant. *See Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 896–897 (Tex.2000). She also points out that, if no special exceptions are filed, then we must "construe the pleadings liberally in favor of the pleader." *Id.* at 897. However, we have previously noted that there is no duty to file special exceptions that, in effect, ask a claimant whether she wants to add other causes of action or legal theories

to the one she has already pled. *Bradt v. West,* 892 S.W.2d 56, 75 (Tex.App.-Houston [1st Dist.] 1994, writ denied). We explained that the purpose of special exceptions is not to create a duty to inquire whether a claimant intended by her pleadings to bring every cause of action that might arguably apply to the facts pled. *Id.* at 75–76.

■ "A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense." *Auld,* 34 S.W.3d at 897 (citing *Roark v. Allen,* 633 S.W.2d 804, 810 (Tex.1982)). Here, Young's motion expressly requested sanctions "pursuant to" Rule 13 and specifically quoted provisions of that rule as the basis for the sanctions sought against appellants. The motion made no request that the family court consider other authority as legal bases to sanction appellants. Specifically, no mention was made of Chapter 10 or the court's inherent power to sanction and no reference was made to the Disciplinary Rules or the Lawyers Creed.[4]

Factually, Young's Rule 13 sanctions request arose from appellants' Joint Motion in which Young alleged that appellants made "defamatory" statements. Young did not allege any additional facts that would alert appellants that they were subject to sanctions pursuant to any statutory provision, rule, or legal theory other than Rule 13. To the contrary, Young's motion asserted that the Joint Motion was "groundless," "brought in bad faith," and "brought for purposes of harassment."

Such allegations track the express language of Rule 13. Thus, the Motion for Rule 13 Sanctions did not provide appellants with sufficient notice to prepare a defense to sanctions that might be imposed under Chapter 10 or the family court's inherent power to sanction for violations of the Disciplinary Rules, the Lawyers Creed, or any other rule or standard. *See Davila v. World Car Five Star,* 75 S.W.3d 537, 542 (Tex.App.-San Antonio 2002, no pet.) (concluding that request for sanctions based only on DTPA section 17.50 was not sufficient to provide "fair notice" to party that he was also subject to sanctions under Chapter 10 and Rule 13).

Young also points out that her motion contained a general prayer for relief. She cites *Burnett v. James* for the proposition that the general rule is that a prayer for general relief will authorize judgment for any *relief* a trial court has jurisdiction to grant, so long as the judgment is supported by the allegations and proof and is *consistent with the theory of recovery stated in the pleadings.* 564 S.W.2d 407, 409 (Tex.Civ.App.-Dallas 1978, writ dism'd). However, this rule is inapposite to the issue at hand. The question is not whether appellants had notice of the particular "relief" that was awarded to Young; rather, it is a question of whether appellants were afforded notice of the bases for the sanctions imposed against them to enable them to mount an adequate defense.

■ Young further contends that the unpled and unnoticed bases for the sanctions award were tried by consent because evidence was presented at the sanctions hearing that went beyond the four corners

---

4. We recognize that a court can assess sanctions based on its inherent authority *sua sponte,* without a motion from a party. Nevertheless, the court must provide notice to the party that it intends to rely on its inherent authority to sanction to allow the party to prepare a defense. *See Kutch v. Del Mar Coll.,* 831 S.W.2d 506, 511 (Tex.App.-Corpus Christi 1992, no writ). It is undisputed that the family court did not provide any notice to appellants that it intended to *sua sponte* sanction them under its inherent power.

of the Joint Motion. Young points out that appellants presented evidence regarding the events leading to the filing of the Joint Motion and what transpired in bankruptcy court.

 Trial by consent is intended to cover the exceptional case in which it clearly appears from the record, as a whole, that the parties tried the unpleaded issue. *Stephanz v. Laird,* 846 S.W.2d 895, 901 (Tex.App.-Houston [1st Dist.] 1993, writ denied); *Mastin v. Mastin,* 70 S.W.3d 148, 154 (Tex.App.-San Antonio 2001, no pet.). It is not intended to establish a general rule of practice and should be applied with care, and never in a doubtful situation. *Stephanz,* 846 S.W.2d at 901. Trial by implied consent "applies only where it appears from the record that the issue was actually tried, although not pleaded." *Johnston v. McKinney Am., Inc.,* 9 S.W.3d 271, 281 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (citation omitted). To determine whether the issue was tried by consent, the court must examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *Stephanz,* 846 S.W.2d at 901. When evidence relevant to both a pleaded and an unpleaded issue has been admitted without objection, the doctrine of trial by consent should not be applied unless clearly warranted. *Johnston,* 9 S.W.3d at 281.

 When determining whether Rule 13 sanctions are warranted, a court may consider the entire history of the case. *Falk & Mayfield v. Molzan,* 974 S.W.2d 821, 825 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). Rule 13 permits sanctions against attorneys who sign pleadings, motions, or other papers that are both groundless and either brought in bad faith or for the purpose of harassment. TEX.R. CIV. P. 13. To determine if a pleading was groundless, the court will look to the facts available to the litigant and the

circumstances at the time the suit was filed. *Skepnek v. Mynatt,* 8 S.W.3d 377, 382–83 (Tex.App.-El Paso 1999, pet. denied). Thus, appellants' admission of evidence regarding the circumstances surrounding the filing of the Joint Motion is arguably relevant to both the pleaded Rule 13 sanctions and those sanctions that were based on unpleaded grounds. We conclude that the record does not support Young's contention that the unpleaded issues were tried by consent.

We also conclude that appellants received proper notice that the family court was considering sanctions against them under Rule 13 for signing the Joint Motion. Appellants did not receive proper notice with regard to any other ground for sanctions relied on by the family court in imposing sanctions. We hold that the family court abused its discretion in sanctioning appellants based on Chapter 10 and its inherent power, including any sanctions imposed for violating the Disciplinary Rules and the Lawyers Creed.

We sustain appellants' second issue.

## B. Rule 13 Sanctions

 The only legal basis remaining that could support the sanctions against appellants is Rule 13. As a sub-point of their sixth issue, appellants contend that the trial court was without jurisdiction to impose Rule 13 sanctions for filing the Joint Motion in bankruptcy court. Appellants contend that any challenge to the bankruptcy filing needed to be made in bankruptcy court. We agree.

We find the recent case of *Mantri v. Bergman* to be instructive. 153 S.W.3d 715 (Tex.App.-Dallas 2005, pet. filed). There, Mantri sued an attorney under Chapter 10 for allegedly frivolous litigation that had been filed in Denton County. *Id.* at 716. In affirming the trial court's

granting of a plea to the jurisdiction, the Dallas Court of Appeals held that the only court with subject matter jurisdiction over a sanctions request under Chapter 10 is the court in which the allegedly frivolous litigation was pending.[5] *Id.* at 718. In this regard, the court wrote, "Because the allegedly frivolous litigation in this case was never before the Dallas County district court, that court lacked jurisdiction over any proceeding for sanctions concerning the allegedly frivolous litigation." *Id.*

As in *Mantri,* we conclude that the family court in this case did not have jurisdiction to impose Rule 13 sanctions concerning the Joint Motion filed in bankruptcy court.[6] Any motion for sanctions seeking to have a filing in a federal bankruptcy court declared groundless, harassing, frivolous, or similarly so, should be brought in the bankruptcy court, not a state family court. Indeed, Young was not without a remedy in bankruptcy court. Like Rule 13, Federal Rule of Civil Procedure 11 and Bankruptcy Rule 9011 direct the court to impose appropriate sanctions if, *inter alia,* a signed motion or pleading is brought for purposes of harassment, contains allegations or factual contentions that have no evidentiary support, or requests relief that is not supported by the law or a good faith argument to extend or reverse existing law.[7] Fed.R.Civ.P. 11; Fed. R. Bankr.P. 9011.

Because it was without jurisdiction to impose Rule 13 sanctions related to the signing of the Joint Motion filed in bankruptcy court, we hold that the family court abused its discretion by imposing sanctions against appellants based on Rule 13.[8] We

5. The *Mantri* court also held that Chapter 10 does not permit a party to bring an independent cause of action for sanctions. *Mantri v. Bergman,* 153 S.W.3d 715, 718 (Tex.App.-Dallas 2005, pet. filed).

6. As in *Mantri,* the family court also did not have jurisdiction to impose Chapter 10 sanctions related to the Joint Motion. It is arguable that the family court had jurisdiction to impose sanctions based on its inherent power had proper notice been given. At least one appellate court has concluded that a court has the inherent power to impose sanctions for conduct in another court. *Howell v. Tex. Workers' Comp. Comm'n,* 143 S.W.3d 416, 447 (Tex.App.-Austin 2004, pet. denied). This is because "[a] trial court has the inherent power to take action that will 'aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity.' " *Id.* (quoting *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398 (Tex. 1979)). We however do not reach this issue.

7. As noted by one federal district court, "A debtor who believes a filing in bankruptcy is frivolous or a violation of the automatic stay occurred has a comprehensive scheme of remedies available in the federal courts. The existence of this comprehensive scheme precludes collateral attacks on such filings in state courts." *Glannon v. Garrett & Assocs., Inc.,* 261 B.R. 259, 264 (D.Kan.2001). The Ninth Circuit has explained that "the unique, historical, and even constitutional need for uniformity in the administration of the bankruptcy laws is another indication that Congress wished to leave the regulation of the parties before the bankruptcy court in the hands of the federal courts alone." *MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910, 915 (9th Cir.1996). "[I]t is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized." *Gonzales v. Parks,* 830 F.2d 1033, 1036 (9th Cir.1987). In other words, "The availability of sanctions in bankruptcy proceedings reflects Congress's intent that the case by case development of law relating to bad faith and willful misconduct in bankruptcy proceedings should be accomplished in federal courts and not in state court." *Glannon,* 261 B.R. at 265.

8. Young cites *Malone v. Abraham, Watkins, Nichols & Friend,* for the proposition that an award of Rule 13 sanctions can be based on a filing in another court. No. 01–99–01192–CV, 2004 WL 1120005, at *8 (Tex.App.-Houston [1st Dist.] May 20, 2004, no pet.) (mem.

sustain appellants' sixth issue to that extent.[9]

## Conclusion

We reverse the family court's "Order of Sanctions" and render judgment that Young take nothing with regard to her claim for sanctions against Greene and Mills.

op.). *Malone*, however, is distinguishable in that the trial court imposed sanctions for committing the same conduct for which that court had previously admonished him—filing frivolous lawsuits. *Id.* Here, the family court had made no previous rulings or findings regarding the conduct ultimately sanctioned.

9. Because we sustain issue two and the subpoint in issue six regarding the family court's lack of jurisdiction to impose Rule 13 sanctions for the Join Motion filed in bankruptcy court, we need not consider appellants' other issues. *See* Tex.R.App. P. 47.1 (stating court of appeals must hand down an opinion that addresses every issue raised and necessary to final disposition of appeal).