ACCEPTED
01-14-00082-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/17/2015 5:59:52 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-14-00082-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
4/17/2015 5:59:52 PM
CHRISTOPHER A. PRINE
Clerk

# IN THE COURT OF APPEALS

# FOR THE FIRST DISTRICT OF TEXAS

# AT HOUSTON

## MARY LYNN KANTARA GERKE

## V.

## JAMIL JAMES KANTARA

## APPELLANT'S REPLY BRIEF

LAURA DALE & ASSOCIATES, P.C.

Ashley V. Tomlinson
State Bar No. 24075170
1800 St. James Place, Suite 620
Houston, Texas 77056
Telephone: (713) 600-1717
Facsimile: (713) 600-1718

**ATTORNEY FOR APPELLANT,
MARY LYNN KANTARA GERKE**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................... ii

INDEX OF AUTHORITIES ..................................................................... iii

ARGUMENT and AUTHORITIES ................................................................ 1

    I.     Mary preserved error on each of the Fourteen Modifications .................... 1

        a.  Procedural History and Overview ............................................... 1

        b.  Mary's Motion for Reconsideration and Motion for New Trial were sufficiently specific ............................................................ 6

    II.    James does not contend that the pleadings support the trial court's judgment. ............................................................................... 8

    III.   James has failed to establish trial by consent. ........................................ 9

    IV.   Each of the Fourteen Modifications substantively modifies the 2010 Order, causing harm to Mary ............................................................ 13

        a.  Modification 1 ..................................................................... 13

        b.  Modifications 2-5 and 8 ......................................................... 14

        c.  Modification 13 ................................................................... 16

    V.    Mary did not invite error on the question of attorney's fees .................... 17

        a.  Appellants must request additional findings on omitted elements ..... 17

        b.  The trial court omitted elements from its findings of facts and conclusions of law ............................................................ 18

    VI.   Orders regarding counseling or secondary health insurance .................... 20

CONCLUSION and PRAYER ..................................................................... 22

CERTIFICATE OF COMPLIANCE .............................................................. 23

CERTIFICATE OF SERVICE .................................................................... 24

# INDEX OF AUTHORITIES

## CASES

*Bailey v. Rodriguez,*
351 S.W.3d 424 (Tex.App.—El Paso 2011, no pet.) ..............................................20

*Baltzer v. Medina,*
240 S.W.3d 469 (Tex. App.—Houston [14th Dist.] 2007, no pet.)........................11

*Binder v. Safady,*
193 S.w.3d 29 (Tex.App.—Houston [1st Dist.] 2006, no pet.)............................ 8-9

*Flowers v. Flowers,*
407 S.W.3d 452 (Tex. App.—Houston [14th Dist.] 2013, n.p.h.) ............ 8-9, 12, 15

*Greene & Mills v. Young,*
174 S.W.3d 291 (Tex.App.—Houston [1st Dist.] 2005, pet. denied) ................. 9-10

*Holley v. Adams,*
544 S.W.2d 367 (Tex. 1976)............................................................................. 11-12

*In the Interest of A.B.H. & L.N.H.,*
266 S.W.3d 596 (Tex.App—Fort Worth 2008, no pet.).........................................10

*King v. Lyons,*
2014 Tex. App. LEXIS 13908 (Tex.App.—Houston [1st Dist.] Dec. 30, 2014)......9

*Moneyhon v. Moneyhon,*
278 S.W.3d 874 (Tex.App.—Houston [14th Dist.] 2009, no pet.)................... 10-11

*Moreno v. Perez,*
363 S.W.3d 725(Tex.App.—Houston [1st Dist.] 2011, no pet.)....................... 11-12

*Sage Street Assoc. v. Northdale Constr. Co.,*
863 S.W.2d 438 (Tex. 1993).................................................................................10

*Vickery v. Comm'n for Lawyer Discp.,*
5 S.W.3d 241 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) .................. 19-20

## STATUTES AND RULES

TEX. FAM. CODE §106.002 ................................................................17, 20

TEX. FAM. CODE §153.002 ................................................................11

TEX. FAM. CODE §153.071 ................................................................3

TEX. FAM. CODE §153.073 ................................................................ 2-7

TEX. FAM. CODE §153.074 ................................................................6

TEX. FAM. CODE §153.132 ................................................................ 2-7

TEX. FAM. CODE §156.005 ................................................................ 17-20

TEX. R. APP. 33.1 ................................................................1

TEX. R. CIV. P. 296 ................................................................18

TEX. R. CIV. PROC. 298 ................................................................18

TEX. R. CIV. PROC. 299 ................................................................ 18-19

**ARGUMENT AND AUTHORITIES**

## I.     Mary preserved error on each of the Fourteen Modifications.

Mary preserved error with respect to each of the Fourteen Modifications. James concedes that Mary preserved error with regard to midweek possession, but contends that Mary has failed to preserve error on the remaining thirteen modifications. Appellee's Brief at 16. In order to preserve an issue for appellate review, the record must show that "the complaint was made to the trial court by a timely request, objection, or motion" that stated the grounds with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. TEX. R. APP. 33.1(a)(1)(A). A motion for new trial overruled by operation of law preserves for appellate review any complaint properly made in that motion, unless taking of evidence was necessary to present the complaint in the trial court. TEX. R. APP. P. 33.1(b). Mary adequately preserved error regarding each of the Fourteen Modifications in her Motion for Reconsideration and Motion for New Trial.

### a. Procedural History and Overview

On the last day of trial, James admitted into evidence a list of his requested relief. R1;8RR91-92. In his requested relief, James asked that the trial court leave intact the existing order regarding possession and access and the majority of the existing order regarding conservatorship. R1;8RR91-94. The only modification of

1

conservatorship that he requested was to Mary's rights under Section 153.073; specifically, he asked that Mary not contact school officials, and medical and mental health-care providers in a "harassing, offensive, or intimidating manner." R1; 8RR92-94.

At that time, the court had also heard hours of testimony of the following possession schedule: Mary had the right to possession of the children on Wednesdays from 5 p.m. until 8 p.m. and her weekend periods of possession ended on Mondays at the time the children's school resumed. 1SCR13. At the close of evidence, the trial court made the following rendition:

> "I'm appointing Mr. Kantara sole managing conservator, Ms. Kantara as sole possessory conservator…I'm giving Mr. Kantara the exclusive right to make all educational decisions, all medical decisions. I'm giving him the option of *consulting* with Ms. Gerke should he choose…Possession will be no *overnight* midweek, 1st, 3rd and 5th Fridays…to 6:00 p.m. on Sunday" (emphasis added).

8RR134-35. The trial court also stated that, despite the existing possession order and the pleadings, "[this court's] policy is to…return to primary on Sunday." 8RR125.

Prior to entry of the order, Mary filed her Motion for Reconsideration. 4SCR42. Mary asked the trial court to reconsider its order naming James as sole managing conservator and removing the obligation to consult with Mary prior to making medical or educational decisions, because the pleadings did not support those modifications. 4SCR42-43. Mary did not raise any other points in her

2

motion, because there were still disputes as to the substantive interpretation of the trial court's oral rendition that the court had not yet resolved. 4SCR42-43; 9RR4-14.

On October 10, 2013, the parties appeared for a contested entry hearing. 9RR4-14. There were disputes as to whether James's proposed order was consistent with the trial court's oral rendition. 9RR4-14. At the entry hearing, counsel argued over the following issues: (1) whether the court ordered that Mary lose her midweek period of possession entirely, or simply refused her request for overnight possession; (2) whether James's option to consult with Mary regarding medical and educational decisions also applied to Mary's rights at all times under Section 153.073[1]; and (3) whether the remaining rights and duties under Section 153.132 were modified and, if so, how. 9RR4-14.

At the October 10th hearing, the trial court clarified that he was removing Mary's midweek possession in its entirety. 9RR13. With regard to Mary's rights under Section 153.073, Mary argued that James's proposed order was inconsistent with the court's rendition to the extent that the proposed order improperly expanded the scope of the court's rendition that removed James's obligation to consult with Mary before making medical and educational decisions. James's

---

[1] Section 153.073 outlines a parent's rights *at all times* and include the right to receive information from the other conservator or to confer with the other conservator. TEX. FAM. CODE §153.073. In contract Section 153.132 outlines a distinct set of rights of conservators to be allocated between conservators. TEX. FAM. CODE §153.132; TEX. FAM. CODE §153.071

3

counsel conceded that he extended that ruling to Mary's rights under Section 153.073.  9RR5-7. In response to Mary's objection that this was inconsistent with the trial court's rendition, the trial court stated "I don't necessary disagree with that."  9RR7.  Nevertheless, the trial court still accepted James's proposed order, thus modifying his rendition to order that Mary's rights under 153.073(a)(1)-(2) would only be "at the option" of James.  9RR8-9.

During the contested entry hearing, the trial court also clarified his rendition and made a more detailed rendition regarding the parties' rights and duties under Section 153.132.  In his original rendition, the trial court orally rendered regarding only medical and educational decisions.  8RR134-35. On October 10, Mary sought clarification from the trial court regarding its ruling on Mary's other rights under section 153.132, including the right to consent to marriage and enlistment, the right to represent the children in legal actions, and the right to service and earnings of the children.  9RR10-11. In response, the trial court ordered that James had the obligation to consult with Mary *only* prior to consenting to the children's marriage or enlistment in the armed forces.  9RR10-11. The trial court clarified that all other rights under 153.132 would belong exclusively to James without consultation. 9RR10-11.[2]

---

[2] Under the 2010 Order, other than the children's residence, receipt of child support, medical, and education, all other rights and duties were independent.  1SCR8-9.

In his brief, James inaccurately states the trial court asked Mary "which rights she was specifically worried about" in reference to her Motion for Reconsideration and that she "replied the right to consent to marriage and enlistment, the right to represent the children in legal actions, and the rights to service and earnings of the children." Appellee's Brief at 14. James argues that she, therefore, waived error on all other rights and duties under Section 153.132. Appellee's Brief at 13-14. Yet, as the record reveals, Mary's inquiry on these rights was limited to clarification of the court's rendition; this exchange was not in the context of Mary's Motion for Reconsideration or her Motion for New Trial. 9RR4-14.

Upon clarifying its rendition, the trial court heard Mary's Motion for Reconsideration. 9RR14-15. In response to Mary's motion, the trial court reinstated the parties as joint managing conservators, but kept the substantive allocation of rights as exclusively belonging to James. 9RR16. In other words, the court changed the titles, but still allocated rights to James as if he were sole managing conservator. The trial court also left in place his initial order removing the consultation requirement for medical and educational decisions and his subsequent expansion of that order to other rights and duties. Mary timely filed her Motion for New Trial stating her objections to the court's final order. CR61.

**b. Mary's Motion for Reconsideration and Motion for New Trial were sufficiently specific.**

Mary's motion was sufficiently detailed to give the trial court notice of her objections. The motion clearly stated her specific complaint: the trial court knowingly granted relief for which neither party pleaded. In her motion, Mary challenged all relief that fell within the trial court's explicit finding that the order included "modifications in addition to the modifications requested by the parties." CR62. Mary also specifically objected that the "trial court modified the parties' rights and duties under Chapter 153 of the Texas Family Code" and removed Mary's midweek periods of possession without support in the pleadings. CR62-63. The rights and duties under Chapter 153 refer to a finite list contained in only three provisions: Section 153.073 (rights at all times); Section 153.074 (rights during periods of possession); and Section 153.132 (rights and duties of a parent appointed sole managing conservator). TEX. FAM. CODE §153.073; TEX. FAM. CODE §153.074; TEX. FAM. CODE §153.132.

Even if this by itself were not sufficiently specific to make the trial court aware of the nature of the complaint, the nature of the complaints are apparent to the court from the context. The trial court was well aware which relief deviated from the pleadings. In fact, each item of relief that deviated from the pleadings was due to a purposeful decision on the part of the trial court. On the last day of trial, after hearing testimony about the visitation schedule and James's requested relief, the

6

judge interjected that the court has a standing "policy" to order children to return from weekend visitation on Sundays, and not Mondays. 8RR125. The institution of such a policy, by its very nature, reveals a deliberate action by the trial court to issue orders that may not be supported by the pleadings. The trial court also heard James testify that he was requesting only a few, narrow modifications to Mary's rights under Section 153.073; specifically, that she not contact school staff and medical and mental health care providers in a harassing, offensive or intimidating manner. 8RR92. James admitted into evidence a summary of his requested relief. R1. On that same day, the trial court denied James's requested modifications of Mary's rights, instead "giving [James] the option of consulting with Ms. Gerke should he choose" on all educational and medical decisions. 8RR134-35.[3] At no point had either party requested that James no longer have the obligation to consult with Mary prior to making medical or educational decisions for the children.

Subsequently, at the hearing on Mary's Motion for Reconsideration, the judge admitted that Mary "may have an appellate point." 9RR18-19. Yet, rather than conform to the pleadings, the judge bluntly stated, "if the court of appeals reverses it, so be it." 9RR19. Even though the judge reinstated the parties as joint managing conservators, he still allocated all rights and duties to James as a sole managing conservator. CR33-34. And despite Mary's objection to the removal of the

---

[3] The trial later expanded this ruling on October 10, 2013 to include two of Mary's rights under Section 153.073.

7

consultation requirement in her Motion for Reconsideration, the court expanded that ruling to additional rights and duties. 4SCR42-43; CR31. James has failed to cite to any authority that Mary's objections in her Motion for Reconsideration and Motion for New Trial are not sufficiently specific, or that her objections were not otherwise apparent from the context.

## II. James does not contend that the pleadings support the trial court's judgment.

The central issue in this case is that of due process. More specifically, the issue before this Court is whether the trial court issued a judgment that failed to conform to the pleadings, thus depriving Mary of fair notice. Notably, James does not contend in his brief that there exists any plausible interpretation of the parties' pleadings that would support the modifications in question. His brief does not contain any authority to support an argument that the pleadings could be interpreted to such a broad extent as to give adequate notice to Mary.

Indeed, the trial court's judgment requires an impermissibly broad interpretation of the pleadings. Neither party requested for Mary to *lose* time with the children. R1;8RR91-94; CR4-6; 1SCR36-44. Likewise, neither party requested that James be relieved of his obligation to consult with Mary, that Mary lose her independent rights, or that Mary no longer have the right to basic communication with James about their children, one of whom has special needs. R1;8RR91-94; CR4-6; 1SCR36-44. The facts of this case are strikingly similar to prior

8

modification cases in which courts have refused to find adequate notice. *See generally Flowers v. Flowers*, 407 S.W.3d 452 (Tex. App.—Houston [14th Dist.] 2013, n.p.h.); *see also Binder v. Safady*, 193 S.w.3d 29 (Tex.App.—Houston [1st Dist.] 2006, no pet.)

Recently, this Court reaffirmed the central holdings from these prior cases: a court may not grant relief in a suit affecting the parent-child relationship (SAPCR) unless the parties "had notice by way of the pleadings or the issue was tried by consent." *King v. Lyons*, 2014 Tex. App. LEXIS 13908, at \*19 (Tex.App.—Houston [1st Dist.] Dec. 30, 2014) (citing *Flowers*, 407 S.W.3d at 457). Even though courts should read the pleadings liberally in SAPCRs, the pleadings must still be sufficient to inform the party of the issue. *Id*. (citing *Messier*, 389 S.W.3d at 907). Courts cannot use liberal construction "as a license to read into the petition a claim that it does not contain." *Id*. at \*7-8 (citing *Flowers*, 407 S.W.3d at 458). While general prayers for relief in SAPCRs may include relief consistent with the rest of a parties' pleading, it cannot be used to "enlarge a pleading to the extent that it embraces an entirely different cause of action for which fair notice does not exist." *Id*.

**III. James has failed to establish trial by consent.**

James has failed to establish that any of the Fourteen Modifications were unequivocally tried by consent. Trial by consent applies only to exceptional cases

9

in which it appears from the record that the parties tried an issue not raised by the pleadings. *Greene & Mills v. Young*, 174 S.W.3d 291, 301 (Tex.App.—Houston [1st Dist.] 2005, pet. denied). An issue must have been clearly *tried*. *Id*.

Consent may be found only when evidence regarding an issue is developed under circumstances indicating that both parties understood that the issue was being tried. *In the Interest of A.B.H. & L.N.H.*, 266 S.W.3d 596, 600 (Tex.App—Fort Worth 2008, no pet.) Eliciting testimony or admitting evidence relevant to an unpleaded issue is not by itself sufficient to establish trial by consent. *Sage Street Assoc. v. Northdale Constr. Co.*, 863 S.W.2d 438 (Tex. 1993); *Greene & Mills*, 174 S.W.3d at 301. Moreover, when that same evidence is also relevant to issues raised by the pleadings, that evidence cannot serve as a basis for trial by consent, because it does not indicate to the parties that the issue was being tried. *Moneyhon v. Moneyhon*, 278 S.W.3d 874, 879 (Tex.App.—Houston [14th Dist.] 2009, no pet.).

James has conceded that the issue of midweek visitation was not tried by consent. Appellee's Brief at 25. He has failed to establish that any of the remaining thirteen modifications were tried by consent. While he cites at length to the record to evidence that he contends supports a finding of trial by consent, he ignores that fact that he explicitly testified and admitted into evidence of summary of his requested relief at the end of trial. R1;8RR91-94. Nowhere in his requested

10

relief did he ask the trial court to order any of the modifications at issue in this appeal. R1; 8RR91-94. This in itself indicates that, by the end of trial, neither party understood that the additional modifications were being tried. James has also failed to cite to any part of the record in which he explicitly requested any of the remaining thirteen modifications. *See Baltzer v. Medina*, 240 S.W.3d 469, 476 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (refusing to find that an issue was tried by consent when there was never any testimony expressly requesting that relief.)

Furthermore, all of the evidence to which James cites in support of his argument for trial by consent is also relevant to issues raised in the parties' pleadings. *See Moneyhon*, 278 S.W.3d at 879. In regard to weekend possession, James points to his testimony in which he alleged that the children are stressed out at Mary's house, that the children return upset, that Mary fails to complete their homework over the weekends, and that Mary makes inappropriate and hurtful statements to the children. Appellee's Brief at 23. Even if Mary conceded the veracity of these allegations, they would not be sufficient to constitute trial by consent. They are equally relevant to a defense to Mary's petition and to James's contention that it would not be in the best interest of the children to modify the existing visitation schedule. CR6; TEX. FAM. CODE §153.002 ("The best interest of the child shall always be the primary consideration of the court in determining

11

issues of conservatorship and possession of and access to the child); *Moreno v. Perez*, 363 S.W.3d 725, 737 (Tex.App.—Houston [1st Dist.] 2011, no pet.); *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

Likewise, James cites to globally relevant evidence in an attempt to establish trial by consent of the modification of the parties' rights and duties. James specifically cites to testimony about the ongoing discord and ineffective communication (or absence of communication) between the parties.[4] Yet, this testimony is also equally relevant to the parties' requested relief, particularly Mary's request for primary custody. The ability to effectively communicate (or inversely the failure to communicate) and to co-parent with the other conservator illustrates the overall "parental abilities of the [parent] seeking custody." *See Holley*, 544 S.W.3d at 371-72. Because this evidence is relevant to both pleaded and unpleaded issues, it cannot establish trial by consent. The Fourteenth Court of Appeals has already refused to find trial by consent based on a similar set of facts. *See Flowers*, 407 S.W.3d at 459 (finding that evidence of "hostility and animosity"

---

[4] In his brief, James also states that the amicus attorney "specifically asked James what was the best method of communication between James and Mary." Appellee's Brief at 21. James makes this reference in support of an argument that consultation through Our Family Wizard prior to making educational and medical decisions was an issue that was tried by consent. He refers to this as the "method of consultation." As set forth below in Section IV(b), the trial court did not keep the consultation requirement intact and simply order James to consult with Mary via Our Family Wizard. This is an inaccurate representation of the order and of the record. The trial court *removed* the obligation to consult. Also, the statement is James's brief does not accurately reflect the record. The amicus did not specifically ask James what the best method of communication with Mary. Instead, the amicus asked if James had an "answer" as to how to get the two parties to start "communicating effectively." Again, this is generally relevant to parental abilities to co-parent and communicate.

12

and the parties' inability to communicate did not establish trial by consent to remove the consultation requirement when the same evidence was relevant to the remainder of the judgment).

## IV. Each of the Fourteen Modifications substantively modifies the 2010 Order, causing harm to Mary.

The Fourteen Modifications at issue are just that - modifications. In his brief, James contends that items 1-5, 8, and 13-14 do not constitute modifications. James's argument, however, disregards the plain language of the order and inaccurately interprets the record. All of the Fourteen Modifications substantively modified Mary's rights without notice, depriving her of due process and causing her harm.

### a. Modification 1

The trial court specifically ordered that Mary only has the right to receive information from James concerning the health, education and welfare of the children, *at the option of [James]*." CR31. The court only ordered one narrow exceptions to James's otherwise broad discretion regarding whether to share information about the children: James is required to "post the names of all medical providers and notice of all medical appointments of the children" to Our Family Wizard. CR54. This language is unambiguous and narrow. James is required to tell Mary *only* the names of medical providers and the dates of appointments. CR54. Should there be any information regarding the children's welfare that Mary

13

cannot obtain through the school or medical provider, James may simply choose to withhold it from Mary.

The record reveals that the Our Family Wizard exception was specifically crafted for and limited to this one issue. 9RR9-10. It was intended to give Mary just enough information to make inquiries to the children's medical providers, and to excuse James from having to otherwise share any other information with Mary about their children's well-being. 9RR9-10. Contrary, to James's contentions, the narrow Our Family Wizard exception does not require him to consult with Mary prior to making any decisions.

### b. Modifications 2-5 and 8

James contends that the trial court did not modify the 2010 order when it removed James's obligation to consult with Mary. According to James, the trial court did not remove the consultation requirement, but only modified the *method* of consultation. Appellee's Brief at 21-22. This argument, however, is based on a specious interpretation of the plain language of the order and has no basis in the record. Contrary to what James claims in his brief, the order does not require consultation.

There is no language in the 2013 order that requires James to consult with Mary prior to exercising his exclusive rights. CR33-34. Moreover, the phrase "after consultation with Mary," which was in the 2010 Order, has been removed from the

14

same rights and duties in the 2013 Order. 1SCR8; CR33-34. The order is consistent with the trial court's rendition, in which the court explicitly ruled that James was not required to consult with Mary. 8RR135; 9RR4-14.

Further, the Our Family Wizard language only requires *disclosure* of very limited information; it does not require *consultation* prior to making medical, psychological or educational decision. CR54. Not only is this clear from the plain language of the order, but it is also readily apparent from the trial court's explanation. On October 10, the trial court explained that James must post this limited information to Our Family Wizard "so there is *simply a disclosure*" (emphasis added). 9RR8.

There is simply no requirement that James consult with Mary through Our Family Wizard prior to exercising his exclusive rights. Just as in *Flowers v. Flowers*, the trial court erred when it completely removed the obligation to consult prior to exercising exclusive rights. 407 S.W.3d 452, 456-57 (Tex. App.— Houston [14th Dist.] 2013). [5]

---

[5] James attempts to distinguish this case from *Flowers* by contending that all of the rights in the 2010 Order that are now at issue in Modifications 2-5 and 8 were conditional. Specifically, James claims that James's obligation was limited to consultation with Mary "'to the extent possible' before making a decision concerning the health, education and welfare of the children." *Appellee's Brief*, p. 21. Once again, even a cursory review of the plain language of the order reveals that this is a wholly inaccurate representation. Under the 2010 Order, James was *required* to consult with Mary prior to making all medical, psychological and educational decisions under Sections 153.132 and 153.074. 1SCR7-8. There was no language in the 2010 Order that limited or conditioned his obligation to consult only "to the extent possible." 1SCR7-

### c. Modification 13

Finally, James contends that the trial court did not modify Mary's weekend periods of possession, because trial court only "switched the pick-up and delivery time."[6] Appellee's Brief at 24. Yet, James concedes that Mary does, in fact, receive less time with the children on the weekends. His argument rests on the assertion that it did not "significantly lessen Mary's possession time." Appellee's Brief at 24. Yet, it still constitutes a modification that neither party requested. CR4-6; 1SCR36-44. By the trial court's own admission, the decision to modify Mary's weekend periods of possession was based on a preexisting court "policy" that weekend visitations end on Sunday. 8RR125.

---

8. All of these exclusive rights were explicitly contingent upon James first consulting with Mary. 1SCR7-8.

This language ("to the extent possible") is only found in *one* of the parties' mutual rights at all times under Section 153.073. 1SCR5-6. In the 2010 Order, each party had the right under 153.073 to confer with the other parent "to the extent possible" before the initiating parent made a decision. 1SCR5-6. For example, under the 2010 Order, Mary had the right to consult with James before she made a decision concerning the welfare of the children. James has inexplicably transplanted that language to other parts of the 2010 order.

[6] Under the 2010 Order, Mary picked up the children on first, third and fifth Fridays of each month at 6:00 p.m. and returned the children to school the following Monday at the time school resumed. 1SCR12-13. Under the current order, Mary is allowed to pick up the children on Fridays from school, instead of 6:00 p.m. CR37-38. However, she lost her Sunday overnight periods of possession; she must now return the children to James on Sundays at 6:00 p.m. CR37-38.

16

**V. Mary did not invite error on the question of attorney's fees.**

James's argument regarding invited error is misplaced. A request for findings and conclusions that are adverse to an appellant's position does not constitute invited error. To the contrary, this is a relatively common and sometimes necessary a step to preserve rights on appeal. An appellant must request additional findings on omitted elements to prevent them from being deemed on appeal.

### a. The trial court omitted elements from its findings of facts and conclusions of law.

In its final order, the trial court awarded James's attorney a judgment for attorney's fees, expenses and costs in the amount of $50,000. CR54. On March 17, 2014, the trial court entered its Findings of Fact and Conclusions of Law, in response to Mary's request. 4SCR37-39. In its conclusions, the trial court stated that the judgment for attorney's fees in the amount of $50,000 was reasonable and necessary. 4SCR37-39. In its findings, the trial court found that its order was "based upon [Mary's] past history" and "obstructionism." 4SCR37-39. The trial court, however, did not state whether it awarded fees under Section 106.002 or Section 156.005 of the Texas Family Code. 4SCR37-39.

These provisions constitute the two grounds of recovery of attorney's fees in a modification. Section 106.002 requires a showing that the fees were reasonable and necessary. TEX. FAM. CODE §106.002. In comparison, a trial court shall award attorney's fees under Section 156.005 if it finds that a suit for modification was

17

frivolously filed or designed for the purpose of harassment. TEX. FAM. CODE §156.005. While the trial court's findings and conclusions included elements of each of the two grounds for recovery of attorney's fees, the trial court omitted from its findings and conclusions elements that definitely awarded the fees under one or the other. This left Mary without guidance on appeal.

Mary subsequently asked the trial court to make findings on the omitted elements. 3CR3. James now contends that Mary invited error by requesting this clarification. In fact, Mary was required to submit her request and additional requests for findings of fact and conclusions of law. Any omitted findings regarding attorney's fees would have jeopardized her success on appeal.

**b. Appellants must request additional findings on omitted elements.**

Mary was required to request additional, specific findings and conclusions regarding attorney's fees in order to demonstrate the trial court's error. Rule 296 of the Texas Rules of Civil Procedure require appellants to request findings of fact and conclusions of law. TEX. R. CIV. P. 296. After a court files its original findings, any party may file a request for additional or amended findings or conclusions. TEX. R. CIV. P. 298. When the findings and conclusion contain one or more elements of a ground of recovery, those omitted, unrequested elements will be supplied by presumption in support of the judgment. Tex. R. Civ. P. 299.

18

An appellant must then request the omitted finding or conclusion, even if they are adverse to the appellant's position. Otherwise, a court could presume any ground of recovery for which there are one or more elements already present in the trial court's findings and conclusions. When a court inadvertently omits from its findings an essential element of a ground of recovery or defense, the presumption of validity will supply the omitted element by implication. TEX. R. CIV. P. 299. However, a missing element that has been specifically requested cannot be supplied by implication. *Vickery v. Comm'n for Lawyer Discp.*, 5 S.W.3d 241, 253 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). Requests for findings and conclusions, therefore, provide a basis for overcoming the presumption of validity and demonstrating error on appeal. *Id*. As a result, they are normally requested by the *appellant*, even though those findings may be adverse to the appellant's position. *Id*.

Moreover, in order to avoid the presumption of validity, the appellant must make the specific omission clearly manifest to the trial court. *Id*. An appellant cannot make a general request for additional findings or conclusions; an appellant must submit to the trial court the *specific* finding or conclusion that was omitted. *Id*. Any requests by an appellant for findings or conclusions in support of their position on appeal are inappropriate, as a court is not required to make additional findings which conflict with the original findings. *Id*. Nor would a request for

19

conflicting findings be sufficient to overcome the presumption of validity, because they may not apprise the trial court that it has omitted an element. *Id*.

Therefore, Mary's request for findings and conclusions regarding attorney's fees was necessary to her appeal. The trial court's findings and conclusions contained elements of both Section 106.002 and Section 156.005. Had she not requested additional findings or conclusions regarding the trial court's basis for attorney's fees, a reviewing court could uphold the trial court's award under either ground of recovery. *Bailey v. Rodriguez*, 351 S.W.3d 424, 425-26 (Tex.App.—El Paso 2011, no pet.) (presuming that the trial court could have awarded fees under Section 106.002 and Section 156.005 when the trial court failed to make findings of fact and conclusions of law). Her request did not invite error, but was consistent with the Texas Rules of Civil Procedure and case law. James has failed to cite to any authority that a request for findings of fact and conclusions filed pursuant to the Texas Rules of Civil Procedure constitutes invited error.

## VI. Orders regarding counseling or secondary health insurance.

Finally, Mary wishes to briefly respond to James's allegations that Mary misinformed this Court about the order for counseling. Appellee's Brief at 9. He similarly alleges that Mary omits facts regarding the order that relieved Mary of the obligation to carry secondary health insurance. Appellee's Brief at 10. This is simply inaccurate.

20

In regard to counseling, James has misconstrued and omitted relevant portions of Mary's brief. In her brief to this Court, Mary stated that "[i]n response to Dr. Harrison's recommendation, the trial court issued temporary orders for counseling for the children." CR10; 6RR48-49, 87. This is an accurate summary of the record. On April 4, 2012, James's expert witness, Dr. Harrison, testified that he recommended counseling for all of the children. 6RR48-49. At the end of the hearing, the trial court ordered the children to counseling (6RR87) and subsequently entered its order on April 9, 2013. CR10. In its final order, the trial court ordered that the parties' youngest child continue in counseling. CR53.

It is also entirely accurate that prior to the trial court's order on April 9th order, Mary had continuously sought and the court had considered her request for counseling for the children. CR72 (August 12, 2012 docket entry in which the trial court noted that it had taken the motion for counseling under advisement); 1SCR40; 4RR72. It is also entirely accurate that James opposed Mary's request for court-ordered counseling, despite the recommendations of his own expert witness. Throughout the suit, James explicitly stated he was opposed to court-ordered counseling. 4RR8, 45.

In regard to the secondary health insurance, James claims that Mary omitted from her brief the fact that James had agreed to release Mary from her obligation to carry secondary health insurance, as long as Mary reimbursed him for the cost of

the health insurance premiums.  Appellee's Brief at 10.  Mary discloses this very fact on page 7 of her brief: "The parties, however, were unable to reach an agreement on the amount Mary should be required to pay to James for reimbursement of health insurance premiums for the health insurance available through James's employer."  Appellant's Brief at 7-8.

## CONCLUSION AND PRAYER

For the foregoing reasons, the trial court's order should be reversed.  Mary Lynn Kantara Gerke respectfully requests that this Court reverse the trial court's judgment and remand with explicit instructions to remove the Fourteen Modifications from the order and to restore the preexisting order.  Further, Mary Lynn Kantara Gerke respectfully requests that this Court vacate the award of attorney's fees under Sections 106.002 and 156.005 of the Texas Family Code.  In the alternative, Mary Lynn Kantara Gerke respectfully request that this court remand for further proceedings to reconsider the award of attorney's fees.

Respectfully submitted,

LAURA DALE & ASSOCIATES, P.C.

/s/ Ashley V. Tomlinson
ASHLEY V. TOMLINSON
State Bar No. 24075170
1800 Saint James Place, Suite 620
Houston, Texas 77056
Phone: (713) 600-1717
Fax: (713) 600-1718

22

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Reply Brief contains a total of 5,487 words, excluding parts of the brief exempted under Tex. R. App. P. 9.4(i)(1), as verified by Microsoft Word 2010.  This Reply Brief is therefore in compliance with Tex. R. App. P. 9.4.(i)(2)(C).

/s/ Ashley V. Tomlinson
ASHLEY V. TOMLINSON
Counsel for Appellant,
Mary Lynn Kantara Gerke

# CERTIFICATE OF SERVICE

I certify that on this 17th day of April 2015, a true and correct copy of this Brief of Appellant was served in accordance with Rule 9.5 of the Texas Rules of Appellate Procedure as follows:

Mr. Wilfried Schmitz
17040 El Camino Real, Suite 400
Houston, Texas 77058
**VIA-E-FILE**

Douglas York
3355 W. Alabama, Suite 100
Houston, TX 77098-1863
**VIA E-FILE**

/s/Ashley V. Tomlinson
ASHLEY V. TOMLINSON
Counsel for Appellant,
Mary Lynn Kantara Gerke